[No. 1361-1.    Division One.    July 9, 1973.]

TULALIP SHORES, INC., *Respondent,* v. ELIZABETH M. MORTLAND et al., *Appellants.*

*Williams & Novack, Parker Williams,* and *Edward D. Hansen,* for appellants.

*Hansen & Blackburn* and *John R. Blackburn,* for respondent.

FARRIS, J.—Tulalip Shores, Inc. purchased the real property that is the subject matter of this action from the heirs of Charley Farmer in 1961 at public sale. The land was purchased subject to a lease to Thomas G. Mortland for a period of 25 years from the August 15, 1944 date of the lease. Improvements of a value in excess of $7,500, including fill dirt, road, water system and bulkhead were placed upon the land by Mortland. Mortland, relying upon certain language in the lease, claims a right to remove certain improvements and to be compensated for others. He appeals from a trial court ruling that he had neither the right to remove nor to be compensated for the fill dirt, road, water system and bulkhead. We affirm the trial court.

The lease prepared by agents for the lessor provided:

The Lessees and their assigns have the right and privilege to plat and sublease any portion of the above de-

scribed premises; build and maintain roads; build power lines; drill or dig wells and install a water distribution system; install septic tanks, and/or sewerage system, all of a permanent nature to the value of $7,500.00. Appraisal of the said improvements to be made on such date or dates as the Lessees and Lessors may designate.

. . .
All other improvements, including buildings, etc., owned by the Lessees, in excess of the $7,500.00 shall remain the property of the Lessees at the expiration of this lease, unless otherwise provided, SUBJECT TO THE CONDITION, that no improvements or buildings of the Lessees shall be removed or disposed of, unless and until all the rents have been paid.

Mortland argues that these paragraphs give him the right to remove or to be compensated for improvements in excess of $7,500. If there is any ambiguity, he argues, it should be resolved against the drafter. An appendix dated January 25, 1945 was added to the lease. That appendix provided:

It is further understood and agreed by the parties to the foregoing Lease, that no improvements, however, shall be removed or disposed of by the Lessees which would in any way damage or destroy the usefulness of the buildings and improvements or other fixtures which are to remain on the land and which under the terms of this Lease become the property of the Lessors, . . .

The reasonable interpretation of the pertinent language is that Mortland must make improvements of a minimum value of $7,500; that certain improvements are to become permanent with no right of removal; that other improvements can be removed provided the rents are paid and the value of the remaining improvements is $7,500 or more. Since it was agreed that the value of improvements exceeded $7,500, it was not necessary to introduce evidence from appraisers.

■ ■ The trial court made a finding of fact on the question of removal.

That the court, after having heard argument of counsel and having read the lease dated August 15, 1944 between the Heirs of Charley Farmer, deceased allottee 34 of the

Tulalip Indian Reservation, called lessor, and Thomas G. Mortland and Elizabeth M. Mortland, husband and wife, called lessees, and the appendix attached to said lease, the court found that those improvements before the court, including the bulkhead, water system, road and any fill dirt put upon the soil by the defendants in this action, were not intended to be at any time removed from the leasehold and were intended to be permanent improvements to said property.

Finding of fact No. 1. There is substantial evidence in the record to support this finding. It will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Further, we agree with a decision of the Massachusetts court:

In determining whether an addition made by a tenant to a leased building is removable or not by him during his term, the chief element to be considered is the mode of its annexation, and whether it can be removed without substantial injury to the building or to itself. The intention with which it was put there, though often an element to be considered, is of secondary importance.

*Collamore v. Gillis*, 149 Mass. 578, 581, 22 N.E. 46 (1889).

■ ■ Mortland recognizes that it is not "practical" to remove certain of the improvements but he argues that he is entitled to compensation for those improvements on equitable grounds. We recognize the equity powers of the court. We also recognize that the improvements made by Mortland have substantially enhanced the value of the real estate. This alone, however, is not a basis upon which equitable relief can be granted. Mortland did not place the improvements upon the premises by mistake; the improvements were made by Mortland for his own benefit during the term of the lease. He knew the length of his term and while he may have reasonably expected to negotiate for an additional term, he knew that he had no right to renew. Unjust enrichment is a general principle that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained or

appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. *See* 66 Am. Jur. 2d *Restitution and Implied Contracts* § 3 (1973). There is no basis upon the facts in issue for the application of the doctrine. No other grounds for granting equitable relief were advanced by Mortland and we find none.

The lease agreement itself makes no reference to compensation for improvements which are not removed within 120 days. It provides that such improvements will become the property of the lessor. This is inconsistent with an agreement for compensation in the event of their nonremoval but we have nevertheless carefully considered the argument.

The question of the removal of a house commonly referred to as the Brust house was resolved by the decision in *Stuchell v. Mortland,* 8 Wn. App. 884, 509 P.2d 770 (1973). The lease between Mortland and Brust, his subtenant, could have provided that title to any improvement not removed within 60 days vested in Mortland. Instead it provided:

> Upon full compliance with all of the terms and conditions of this present lease, and not otherwise, lessees shall have a period of sixty (60) days after the termination of this present lease within which to remove any of the structures placed thereon, as above provided; but, in the event lessees fail to remove the same within such time, all such improvements shall remain a part of the real estate.

The real estate was owned by Mortland's lessor. Mortland's rights were limited as defined by the lease. He therefore had no interest in the Brust house which became a part of the land.

Affirmed.

JAMES and CALLOW, JJ., concur.