[No. 1955-3.   Division Three.   July 29, 1977.]

IRVING H. BENNION, ET AL, *Respondents,* v. COMSTOCK INVESTMENT CORPORATION, ET AL, *Appellants.*

---

*Raymond M. Batten, Jr.*, pro se, and *William J. Powell*, for appellants.

*F. Lawrence Taylor, Jr.*, and *Gordon, Ripple & Taylor*, for respondents.

GREEN, J.—Plaintiffs brought a declaratory judgment action to cancel a promissory note given by them to the defendant, Comstock Investment Corporation (Comstock), in return for moneys used to construct improvements on property leased from William Newell. Comstock counterclaimed for judgment on the note. Defendant, Raymond Batten, Jr., the successor in interest to the property, counterclaimed for damages for unlawful detainer. From a judgment canceling the note and awarding defendants $346.69 for unpaid rent, all parties appeal. We reverse.

Three questions are presented: (1) Was there a failure of consideration for the note? (2) Would Comstock be unjustly enriched if it recovered on the note while retaining the improvements? (3) Should the findings of fact and conclusions of law have distinguished between defendants?

On April 1, 1972, Mr. Newell leased an office building from Comstock for a term of 10 years with the privilege of

assigning or subletting the premises upon prior written consent of Comstock. In April 1973, without obtaining such consent, Newell, who represented that he owned the premises, leased a portion thereof to plaintiffs at a monthly rental of $300 for a term of 7 1/2 years. They were given the option to renew for another 5 years. Mr. Newell agreed to finance remodeling of the premises according to plans attached to the lease (none were attached), and plaintiffs agreed to repay those costs at a rate of $150 per month. The anticipated remodeling cost is not specified in the lease.

Remodeling commenced. When Mr. Newell was unable to pay the subcontractors, they stopped work and threatened to file liens against the property. Plaintiffs, who were required to vacate their present premises, were anxious to have the remodeling completed. At this time, they learned that Comstock, not Newell, owned the premises. On May 14, 1973, they contacted Mr. Batten, Comstock's secretary-treasurer, and informed him of their need to complete the remodeling. Mr. Batten told them of Comstock's concern about potential liens in violation of its obligation under the mortgage to keep the property free and clear of encumbrances. Based upon these interests, Comstock agreed[1] to

---

[1]The agreement signed by plaintiffs and Comstock provided:

"AGREEMENT

"WHEREAS, Bennion & Shaw, attorneys, an association, hereinafter identified as Lessee have entered into a lease with W. C. Newell, an individual, hereinafter identified as Lessor for the use of the premises at North 1406 Ash Street, Spokane, Washington which premises Lessor leases from Comstock Investment Corporation hereinafter identified as Owner and

"WHEREAS, said lease provides for Lessor to improve at his sole expense said premises to the specifications of Lessee and

"WHEREAS, said premises have or are in the process of being so remodeled and Lessee, in effect, being the managing general contractor for said improvements and

"WHEREAS, Owner has withheld approval of said lease, stating as one of his objections that all costs arising from said improvement must be paid for and

"WHEREAS, demands have been made by subcontractors on said remodeling for payment which demands have been refused by Lessor or payment stopped thereon which has occasioned liens to be filed against subject property and

"WHEREAS, Lessee has entered into an agreement with Lessor wherein Lessor

loan plaintiffs the remodeling cost in return for plaintiffs' promissory note[2] payable at the rate of $450 per month plus interest. Plaintiffs obtained from Newell a release or assignment of the $300 rental payable to him under their lease and this amount plus the $150 to be paid Newell for remodeling comprised the monthly payment to Comstock on the note. Notwithstanding the parties' knowledge of Mr. Newell's financial difficulties, there is nothing in the agreement between Comstock and plaintiffs as to what would happen to the plaintiffs' lease if Newell failed to perform his lease with Comstock.

has assigned payments to be received on said lease to Lessee to the extent of payment for and satisfaction of all indebtedness arising from said improvement and

"WHEREAS, Lessee has agreed to pay all said costs and discharge all indebtedness.

"Now, WHEREFORE,

"The Comstock Investment Corporation, in consideration of Lessee performing the terms of the installment promissory note in the original amount and in the form as attached hereto, marked Exhibit A, does herein agree to finance the unpaid costs and indebtedness arising and to arise from said improvements to the extent provided for in said lease."

[2] "$20,260.31              INSTALLMENT NOTE No._____

"FOR VALUE RECEIVED, Bennion, Shaw & Van Camp promise to pay to Comstock Corporation, or order, the sum of Twenty Thousand Two hundred Sixty & 31/100 DOLLARS with interest thereon at the rate of 12 per cent. per annum from date hereof; payable as follows:

"$450.00 payable on the 29th of each month starting the 29th day of November and thereafter.

"If any of said installments are not so paid, the whole sum of both principal and interest shall become due and payable at once without further notice, at the option of the holder hereof.

"This note shall bear interest at the rate of 12 per cent. per annum after maturity or after failure to pay any installment as above specified, and if this note shall be placed in the hands of an attorney for collection, or if suit shall be brought to collect any of the principal or interest of this note I promise to pay a reasonable attorney's fee.

"Each maker of this note executes the same as a principal and not as a surety.

                    "s/  BENNION, SHAW & VAN CAMP

                        W. Russell Van Camp

                        I. H. Bennion

                        Donald R. Shaw, Jr.                    "

In July 1973, before the improvements were completed, Comstock deeded the premises to Mr. Batten. Mr. Newell failed to pay the rental due on the Comstock lease and in February 1974, he was notified of Comstock's intention to terminate his lease and following entry of judgment, the lease was terminated effective April 15, 1974. At that time, Mr. Batten informed plaintiffs of this termination and that their occupancy was also terminated but if they desired to negotiate a lease or purchase the property, the interim rental would be $30 per day. Thereafter, plaintiffs made payments of $460 per month to Comstock from April through November, but it is disputed as to whether these were on the note or for rental.[3] Plaintiffs terminated their occupancy on November 6, 1974,[4] and vacated the premises. Thereafter, this action was commenced.

First, defendants contend the court erred in finding that there was failure of consideration and declaring the note null and void. In essence, the court determined: defendants by their conduct approved or ratified plaintiffs' lease, an assignment, rather than a sublease, and as a result, defendants stepped into Newell's obligations to plaintiffs; when defendants terminated the leases, the consideration for the note failed and the note was null and void. We disagree with this determination.

---

[3]Mr. Batten testified that the fair rental value was $900 per month, and the court so found. He also testified that he and plaintiffs were negotiating after the notice of April 15 for a rental charge of $900 per month reduced by a credit of $140 for janitorial services and $300 carried by Comstock in anticipation of purchasing a judgment that plaintiffs might receive against Newell, for a total cash rental charge of $460. Mr. Van Camp testified that no definite rental agreement was reached between plaintiffs and Mr. Batten; that the payments were on the note and he did not know why he paid $460 rather than $450.

[4]Notice of termination of Tenancy provides: "Please take notice that the *undersigned tenants*, Irving H. Bennion, Donald R. Shaw, Jr., W. Russell Van Camp, a partnership hereby give you notice that they *do hereby terminate their oral month to month tenancy which they now hold with you on real estate* which is described below and that said tenancy terminates on midnight November 6, 1974. The tenancy described herein is an oral tenancy which has been in effect since May 6, 1974 at which time you gave us written notice of the recision [*sic*] of our written lease agreement. Since that date of May 6, 1974, we have been holdover tenants on a month to month basis." (Italics ours.)

Assuming arguendo that defendants' conduct constituted consent to plaintiffs' lease, we find the court erred in determining that plaintiffs' lease was an assignment pro tanto of the Comstock–Newell lease. In reaching its conclusion, the court relied upon the rule that:

[I]f a lessee sublet the premises or a portion of the premises for the entire term or the remainder of a term, the subletting will operate as an assignment either of the entire estate or *pro tanto* as the case may be.

*Sheridan v. O.E. Doherty, Inc.,* 106 Wash. 561, 563, 181 P. 16 (1919); *Hockersmith v. Sullivan,* 71 Wash. 244, 128 P. 222 (1912). Elaborating upon this rule in *Morrison v. Nelson,* 38 Wn.2d 649, 657–58, 231 P.2d 335 (1951), the court quoted from *Weintraub v. Weingart,* 98 Cal. App. 690, 696–98, 277 P. 752 (1929):

"Whether or not an instrument is to be deemed an assignment of a lease is to be determined by the legal effect and not the form of the instrument. . . . If its legal effect is to substitute a third party for the lessee, conferring upon him the right to the benefits and subjecting him to the burden of the lease for the balance of the term thereof, without providing for any reversionary interest in the original lessee, it will be held to amount to an assignment."

In this case, we do not find these rules applicable.

■ Here, the original term of the lease to plaintiffs was for 7 1/2 years, 1 1/2 years short of the remaining term of the Comstock–Newell lease. However, the court erroneously reasoned that since plaintiffs had the option to renew for an additional 5 years, their lease was for the remaining term and, therefore, was an assignment. In *Murray v. Odman,* 1 Wn.2d 481, 486–87, 96 P.2d 489 (1939), the court said:

It is the generally accepted rule that a *covenant for the extension* of the term of a lease, at the option of the lessee, *operates, upon the exercise of the privilege,* as a present demise for the full term to which it may be extended, and not as a demise merely for the shorter period with the privilege of a new lease for the extended term. . . .

Inasmuch as the respondents herein *exercised* their option, the covenant for extension operated as a present demise of the land for the full term of seven years.[5] (Italics ours.) *See* 50 Am. Jur. 2d *Landlord and Tenant* § 1156, at 42. Since the option was never exercised and plaintiffs no longer enjoy the lease, the option to renew did not create a *present* demise for the remaining term and, thus, did not constitute an assignment. It was nothing more than a sublease.

Even if there was an assignment of the Comstock–Newell lease to plaintiffs, the record is void of any evidence that Comstock agreed to guarantee Newell's performance of the sublease. Due to the release, if there was an assignment, plaintiffs had no obligation to pay rent to Newell or Comstock. For us to so hold would not comport with reality. Apparently, plaintiffs never considered the effect of a valid termination of the Comstock–Newell lease upon their sublease and never made any agreement concerning it.[6] Hence, we must conclude that the note was simply a loan to plaintiffs to enable them to expeditiously complete their offices to be occupied under their sublease. Plaintiffs bargained for a loan in return for a promissory note; they

---

[5]Stoebuck, *The Law Between Landlord and Tenant in Washington: Part II,* 49 Wash. L. Rev. 1013, 1038 (1974), states: "There is language, amounting at least to strong dictum, in two well–known opinions that no distinction exists between renewals and extensions. In determining the length of term for purposes of statutes of frauds, we add to the original term the period of "renewal," making one total term. . . . We can say at least that the Washington court has identified no meaningful distinctions between renewals and extensions in those situations in which such distinctions would matter the most."

[6]A sublessee's rights are no greater than those of his sublessor, and the sublessee is charged with notice and bound by the terms and conditions of the original lease. When the rights of the sublessor have been terminated under the terms of the original lease, a sublessee cannot defeat the right of the owner to possession by virtue of the sublease. Thus, the right of a sublessee to the premises as against the original lessor terminates with the forfeiture of the original lease. A sublessee holds the premises subject to the performance of the obligations of the original lease, and if the sublessor incurs a forfeiture of his lease due to nonperformance of his obligations, the original lessor is entitled to possession as against the sublessee. *See McDuffie v. Noonan,* 176 Wash. 436, 439–40, 29 P.2d 684 (1934); *Shannon v. Grindstaff,* 11 Wash. 536, 40 P. 123 (1895); 49 Am. Jur. 2d *Landlord and Tenant* § 511, at 490–91.

obtained their loan and are obligated on their note. We are unable to find a failure of consideration. Thus, the trial court's findings and conclusions to the contrary are in error.

Second, defendants contend the trial court erred in concluding that the note should not be enforced because of unjust enrichment. The trial court reasoned that to allow defendants to receive the improvements and collect on the note would result in a double recovery and consequently would be inequitable. In the context of the facts presented, we do not agree.

■ Unjust enrichment was described in *Tulalip Shores, Inc. v. Mortland,* 9 Wn. App. 271, 274–75, 511 P.2d 1402 (1973), as

> a general principle that one person should not be permitted unjustly to enrich himself at the expense of another, . . . where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.

*See also Lloyd v. Ridgefield Lumber Ass'n,* 38 Wn.2d 723, 736, 231 P.2d 613 (1951); *Hardgrove v. Bowman,* 10 Wn.2d 136, 137, 116 P.2d 336 (1941); ALI Restatement of the Law, *Restitution* § 1 (1937). This equitable principle does not apply here. The promissory note given by plaintiffs to Comstock was simply a loan to finance plaintiffs in remodeling the premises covered by their sublease with Newell.

Under the sublease, Mr. Newell was to have financed the remodeling and plaintiffs were obligated to repay him for it. Had he done so and then defaulted on the Comstock–Newell lease resulting in a cancellation of the sublease, the improvements would have passed to Comstock. It is patent in this circumstance that plaintiffs would have had no right to recoup the value of the improvements from Comstock; their remedy, if any, would have been against Newell. On the other hand, had there been no default by Newell and plaintiffs occupied the premises for the full term of their lease, at the conclusion of the lease the improvements

would have passed to Comstock. Had Newell not defaulted, Comstock's only right under their lease with him was to receive rent. It becomes apparent that the loan and improvements were for plaintiffs' sole benefit. Mr. Newell's failure to perform his obligations to Comstock and to plaintiffs under the two leases caused plaintiffs' subtenancy to be cut short. This was due to no fault of the defendants and cannot result in unjust enrichment to them. Hence, the court erred in concluding that recovery on the promissory note should be denied upon the theory of unjust enrichment.

It is apparent that the plaintiffs failed to enter into any agreement that would protect them in the circumstances with which they were confronted upon Newell's failure to pay rent under the Comstock–Newell lease. In retrospect, it may have been a bad bargain for plaintiffs, but one with which they must live since all of the parties were competent to enter into the contract. *See Rogich v. Dressel,* 45 Wn.2d 829, 843, 278 P.2d 367 (1954).

Plaintiffs' cross–appeal for wrongful termination of their lease is rendered moot by our decision.

Since the allocation of plaintiffs' payments to Comstock and Batten are in dispute, we reverse and remand for determination of the amount due on the promissory note and unpaid rent.

MUNSON, C.J., and MCINTURFF, J., concur.

Petition for rehearing denied September 9, 1977.

Review denied by Supreme Court February 17, 1978.