[No. 25392-1-I.   Division One.   May 6, 1991.]

BAILIE COMMUNICATIONS, LTD., ET AL, *Appellants,* v. TREND BUSINESS SYSTEMS, INC., ET AL, *Respondents.*

*Lee R. McNair*, for appellants.
*Lance C. Dahl*, for respondents.

KENNEDY, J.—This is the second appeal in this matter. In the first appeal, *Bailie Communications, Ltd. v. Trend Business Sys.*, 53 Wn. App. 77, 765 P.2d 339 (1988), *review denied*, 113 Wn.2d 1025 (1989) (*Bailie I*), this court reversed the trial court's judgment and remanded with instructions that judgment be entered in favor of the Bailies (the individual appellants) against Trend Colleges, Inc. (Trend) in the amount of $175,000. On remand, the trial court entered judgment for this amount but denied the Bailies' request for prejudgment interest. The trial court found that, because the Court of Appeals had characterized the recovery as being based on "unjust enrichment", it was necessarily an unliquidated amount that could not be determined without exercising discretion and, therefore, would not support an award of prejudgment interest. The trial court awarded postjudgment interest from the date the award was entered on the remand by the Court of Appeals.

The Bailies brought the present appeal challenging the denial of prejudgment interest and the award of postjudgment interest from the date of the entry of the judgment on remand. We reverse as to the denial of prejudgment interest and affirm the award of postjudgment interest.

### FACTS
The facts of the case are set forth in *Bailie* I:

On December 1, 1979, the Bailies assigned their one–third interest in a Hawaiian condominium to Suburban Investment Corporation, which already owned the remaining two–thirds. Suburban agreed to pay $175,000 over a 6–year period. The Bailies retained the right to use the condominium for 8 weeks each year until the entire balance was paid.

Harold T. Wosepka, president of Trend Colleges, Inc., guaranteed Suburban's payment obligation in a letter dated December 7, 1979. Wosepka used Trend's letterhead and signed "Harold T. Wosepka, President," but the text of his letter did not mention Trend. Instead, Wosepka wrote that he would "personally guarantee" Suburban's obligation.

The Bailies used the condominium pursuant to the usage agreement up through November 30, 1980, when the first installment of $29,000 to $30,000 representing $5,000 in principal, became due. Neither Suburban nor Wosepka paid this amount or any other portion of the purchase price.

Suburban and Wosepka told the Bailies that Suburban could not pay the installment when it became due. However, they assured the Bailies that the Bailies would receive $175,000 from the proceeds of a $300,000 mortgage of the condominium in complete satisfaction of Suburban's assignment obligation. The only requirement was that the Bailies cosign Suburban's mortgage. The mortgagee demanded that the Bailies cosign the mortgage because the Bailies remained record holder of one–third of the condominium.

The assignment required the Bailies "upon demand by Suburban" to "provide Suburban with any additional document, instrument, assignment, or conveyance which Suburban shall require in order to obtain an insurable title". However, Suburban did not rely on this provision. Instead, Suburban and Wosepka fraudulently induced the Bailies to cosign the mortgage by intentionally misrepresenting Suburban's inability to pay and Suburban's intent to accelerate payment from the mortgage proceeds. As an additional inducement, Suburban signed a written memorandum of the usage agreement, which was originally oral.

The Bailies discovered in June 1981 that Wosepka infused the entire $300,000 into Trend. Suburban and Wosepka intended this result originally, because Trend desperately needed working capital. The Bailies filed suit in July 1983, when the mortgagee foreclosed. They named Suburban, Wosepka, and Trend, among others, as defendants.

The Bailies asserted two theories of liability against Trend. First, they claimed that Wosepka bound Trend with the guaranty letter, in view of an alleged prior understanding that Trend would guarantee Suburban's obligation. Second, the Bailies argued that Trend was a participant in Suburban and Wosepka's fraud.

The Bailies prevailed against Suburban on its assignment contract and against Wosepka on his guaranty letter. However, the court dismissed the claim against Trend. First, the court ruled that Wosepka's letter did not bind Trend. Second, the court found that the Bailies were not damaged by Suburban and Wosepka's fraud. Additionally, the court ruled that Wosepka was not acting on behalf of Trend when he and Suburban perpetrated the fraud.

53 Wn. App. at 78–79.

This court reversed the trial court, finding that, although Wosepka's guaranty did not bind Trend and that Wosepka was not acting on behalf of Trend, the Bailies *had* been damaged by the fraud. They had given up the right to rescind the assignment of their interest in the condominium after Suburban defaulted on its payment. This right

was valued by an agreement between Suburban, Wosepka and Bailies at $175,000. Trend knowingly benefited from this fraud because the money obtained on the mortgage had been infused into Trend as working capital, and at the time, Wosepka was the sole stockholder in Trend.

This court stated that, as a result of this fraud, Trend had been unjustly enriched, and remanded the matter to the trial court with directions that judgment be entered in favor of the Bailies against Trend for $175,000.

On remand the trial court was presented with the issue of whether prejudgment interest would be awarded on the $175,000. The trial court stated:

> Both parties would agree, in looking at the issue of prejudgment interest, that it is the character of the original claim, rather than the Court's ultimate method for awarding damages, that determines whether the prejudgment interest is allowable.
>
> The question is: What was the claim upon which the Court of Appeals awarded judgment in this matter? I would find that the claim upon which the appellate court awarded judgment was unjust enrichment, as is set forth at Page 85 of the opinion in sub two, "Trend's liability for unjust enrichment does not depend on the capacity on which Mr. Wosepka uttered his misrepresentation." It is under a heading at the top of Page 85 entitled "Unjust Enrichment." It appears to me that the character of the claim upon which they awarded liability, that the liability theory that was used was unjust enrichment.
>
> Then they go on to talk about how they arrive at the amount of $175,000. They go on to determine that "the extent of recovery shall be $175,000."
>
> So, I believe that we have a case here that involves a liability claim for unjust enrichment, combined with a method for awarding damages, arrived at because $175,000 is the amount that Suburban and Wosepka told the Bailies they would receive from the condominium if they co–signed Suburban's mortgage.
>
> In awarding damages to the Bailies the appellate court looked to an amount that is calculable by reference to the original promissory note for $175,000, and the subsequent reassurance of payment of $175,000 if they co–signed the mortgage.
>
> It would seem that, almost by definition, when the liability claim is based on unjust enrichment, the court must exercise some discretion. Even though the amount could be easily ascertained here, that does not mean that discretion was not exercised.

I believe, by its very nature, an award based upon quantum meruit is not liquidated. The case I found most directly on point was the case of *Irwin Concrete [, Inc.] v. Sun Coast Properties, [Inc.,]* 33 Wn. App. 190, [653 P.2d 1331,] which is a 1982 case. In that case the court held that prejudgment interest was not allowable in a quantum meruit case; even though, in that case, the judgment in equity was in the same amount as the contract claim.

Therefore, I am denying that part of the Bailies' claim which involved prejudgment interest.

The trial court was also presented with the issue of whether postjudgment interest was payable on the award from December 4, 1986, the date of the original trial court judgment in the case, or from December 1, 1989, the date the trial court entered judgment on the remand from the Court of Appeals. The trial court originally ruled that postjudgment interest would be allowed from the 1986 judgment because the Court of Appeals had only "modified" the original judgment by finding damages in the amount of $175,000. However, the trial court subsequently granted reconsideration on the question and found that the Court of Appeals had reversed the original judgment, and that postjudgment interest could only run from the date of entry of the new judgment by the trial court on remand.

DISCUSSION

Prejudgment Interest

██ The applicable law in this case was stated in *Hansen v. Rothaus,* 107 Wn.2d 468, 472–73, 730 P.2d 662 (1986):

The nature of the claim, not its characterization as sounding in contract or negligence, decides the issue. We reiterate the court's established analysis, and hold that whether prejudgment interest is awardable depends on whether the claim is a liquidated or readily determinable claim, as opposed to an unliquidated claim. *See, e.g., Prier v. Refrigeration Eng'g Co.,* 74 Wn.2d 25, 442 P.2d 621 (1968); *Mall Tool Co. v. Far West Equip. Co.,* 45 Wn.2d 158, 273 P.2d 652 (1954); *Parks v. Elmore,* 59 Wash. 584, 110 P. 381 (1910). The rule is stated:

[I]nterest prior to judgment is allowable (1) when an amount claimed is "liquidated" or (2) when the amount of an "unliquidated" claim is for an amount due upon a specific contract for the payment of money and the amount due is

determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion.

*Prier,* at 32.

A "liquidated" claim is a claim "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Prier,* at 32 (citing C. McCormick, *Damages* § 54 (1935)). A dispute over the claim, in whole or in part, does not change the character of a liquidated claim to unliquidated. *Prier,* at 33 (citing C. McCormick, *Damages* § 54 (1935)).

An unliquidated claim, by contrast, is one

"where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed."

(Italics omitted.) *Prier,* at 33 (quoting C. McCormick, *Damages* § 54 (1935)).

Prejudgment interest awards are based on the principle that a defendant "who retains money which he ought to pay to another should be charged interest upon it." *Prier,* at 34. The plaintiff should be compensated for the "use value" of the money representing his damages for the period of time from his loss to the date of judgment. *Mall Tool Co. v. Far West Equip. Co., supra* at 177; *see also Grays Harbor Cy. v. Bay City Lumber Co.,* 47 Wn.2d 879, 891, 289 P.2d 975 (1955). A defendant should not, however, be required to pay prejudgment interest in cases where he is unable to ascertain the amount he owes to the plaintiff. *Prier,* at 34. *Accord, Ferber v. Wisen,* 195 Wash. 603, 610, 82 P.2d 139 (1938); *Pearson Constr. Corp. v. Intertherm, Inc.,* 18 Wn. App. 17, 20, 566 P.2d 575 (1977).

This court has consistently applied the liquidated–unliquidated analysis to both contract and tort claims.

The Court of Appeals' opinion in *Bailie* I indicates that the claim involved had been "liquidated" within the definition provided above in *Hansen.* The court stated in 53 Wn. App. at 85–86:

Extent of Recovery

Suburban, Wosepka, and the Bailies agreed that the Bailies' right to withhold their signatures from Suburban's mortgage was worth $175,000. Trend knew of this agreement through Wosepka, its president and sole owner. *See* 3 W. Fletcher, [*Private Corporations* §§ 796, 799 (1986)]. Trend cannot now argue that the Bailies lost less than $175,000, because the Bailies surrendered their signatures believing that they would receive this money.

Nor should the Bailies be heard to claim that their loss exceeds $175,000. They acknowledged that this amount would fully satisfy them, even though their ultimate right of rescission and restitution may have been more valuable.

We therefore reverse and remand for entry of judgment against Trend for $175,000.

On appeal the Bailies argue that the source of the trial court's error regarding prejudgment interest was its acceptance of Trend's argument that "unjust enrichment" is the same as "quantum meruit." Trend asserted that because prejudgment interest is not recoverable on an award based on quantum meruit then it is not recoverable in this case where the Court of Appeals characterized Trend's retention of the funds received as "unjust enrichment." Trend repeats this argument in the present appeal and relies on two cases, *Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*, 33 Wn. App. 190, 653 P.2d 1331 (1982); and *Modern Builders, Inc. v. Manke,* 27 Wn. App. 86, 615 P.2d 1332, *review denied,* 94 Wn.2d 1023 (1980), for the proposition that a claim based on unjust enrichment will not support an award of prejudgment interest. But, those cases dealt with awards based on quantum meruit and stated that prejudgment interest is "not allowable in a quantum meruit case."[1]

■■ This apparent confusion of unjust enrichment and quantum meruit is the source of the dispute in this case.

---

[1]Trend provided a statement of additional authorities that illustrates Trend's continuing confusion of unjust enrichment and quantum meruit. This is illustrated by Trend's citation of *Yates v. Taylor,* 58 Wn. App. 187, 791 P.2d 924, *review denied,* 115 Wn.2d 1017 (1990) in which the award involved was based on quantum meruit. Trend also cited *Hanson PLC v. National Union Fire Ins. Co.,* 58 Wn. App. 561, 794 P.2d 66 (1990) in which the damages were alleged to have resulted from fraudulent acts of an employee. The plaintiff in that case had offered proof of its losses by computation using four different methods, each involving different assumptions and each producing different amounts of loss. This has no application to the present case where no evidence was offered to indicate that the amount of unjust enrichment was other than $175,000.

Black's Law Dictionary 1243 (6th ed. 1990) states:

"Quantum meruit" as amount of recovery means "as much as deserved," and measures recovery under implied contract to pay compensation as reasonable value of services rendered. Kintz v. Read, 28 Wash.App. 731, 626 P.2d 52, 55 [(1981)]. An equitable doctrine, based on the concept that no one who benefits by the labor and materials of another should be unjustly enriched thereby; under those circumstances, the law implies a promise to pay a reasonable amount for the labor and materials furnished, even absent a specific contract therefor. Swiftships, Inc. v. Burdin, La.App. 338 So.2d 1193, 1195 [(1976)]. Essential elements of recovery under quantum meruit are: (1) valuable services were rendered or materials furnished, (2) for person sought to be charged, (3) which services and materials were accepted by person sought to be charged, used and enjoyed by him, and (4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services was expected to be paid by person sought to be charged. Montes v. Naismith & Trevino Const. Co., Tex. Civ.App., 459 S.W.2d 691, 694 [(1970)]. *See also* Unjust enrichment doctrine.

Black's also cites *Smith v. Bliss,* 44 Cal. App. 2d 171, 112 P.2d 30, 33 (1941) for the proposition that the amount of recovery in quantum meruit is limited to the reasonable value of the services rendered regardless of any agreement as to value.

Black's Law Dictionary 1535–36 (6th ed. 1990) defines the doctrine of unjust enrichment as the:

General principle that one person should not be permitted unjustly to enrich himself at expense of another, but should be required to make restitution of or for property or benefits received, retained or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. Tulalip Shores, Inc. v. Mortland, 9 Wash.App. 271, 511 P.2d 1402, 1404 [(1973)]. Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another. L & A Drywall, Inc. v. Whitmore Const. Co., Inc., Utah, 608 P.2d 626, 630 [(1980)].

Three elements must be established in order to sustain a claim based on unjust enrichment: a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit

without the payment of its value. Everhart v. Miles, 47 Md.App. 131, 136, 422 A.2d 28 [(1980)]. *See also* Quantum meruit.

Unjust enrichment occurs when one retains money *or* benefits which in justice and equity belong to another. *L&A Drywall, Inc. v. Whitmore Constr. Co.,* 608 P.2d 626, 630 (Utah 1980). The doctrine also applies to retention of property or benefits. Recovery in quantum meruit, however, is limited to the reasonable value of services rendered. *Smith v. Bliss, supra.* Thus while quantum meruit, inasmuch as it involves retention of benefits in the form of services received, falls within the unjust enrichment doctrine, unjust enrichment applies to a far broader category of cases.

In the present case, Trend received a benefit in the form of money received. Trend had knowledge, through its sole stockholder Wosepka, that $175,000 of this money was to be paid to the Bailies. The Court of Appeals in *Bailie* I determined that Trend's retention of this money was wrongful. It was possible to compute with exactness the amount retained by Trend which should have been paid to the Bailies. As Judge Webster stated in *Bailie* I, neither Trend nor the Bailies could dispute the fact that the amount was $175,000. Under these circumstances it was error for the trial court to deny an award of prejudgment interest on this amount.

In its brief on appeal, Trend asserts that the trial court's finding of fact that the Bailies failed to prove any amount of damages is still operative and that this somehow precludes the Bailies from asserting that the amount of their damages was ascertainable. The major premise of this argument is flawed. A decision by the appellate court on appeal as to every question that was determined on appeal and as to every question which might have been determined becomes the law of the case and supersedes the trial court's findings. *Miller v. Sisters of St. Francis,* 5 Wn.2d

204, 207, 105 P.2d 32 (1940).[2] The Court of Appeals ruled in *Bailie* I that the Bailies had been damaged in the amount of $175,000, and that this had been the agreed valuation of their "right to rescind."[3]

Trend also argues, without citation of authority, that the Court of Appeals' failure to provide for interest in its directions on remand evidences a determination that prejudgment interest was not appropriate.

In *Fulle v. Boulevard Excavating, Inc.*, 25 Wn. App. 520, 522, 610 P.2d 387, *review denied*, 93 Wn.2d 1030 (1980), the issue was postjudgment interest. There the court stated:

> Interest on a judgment is allowed by statute. *See* RCW 4.56-.110(2). Therefore, no reason exists for the appellate court to address the issue of interest and silence does not preclude the trial court from awarding interest on the judgment. *White Pass Co. v. St. John*, 78 Wn.2d 188, 470 P.2d 548 (1970); *Yarno v. Hedlund Box & Lumber Co.*, 135 Wash. 406, 237 P. 1002 (1925); *see also Ginn v. Penobscot Co.*, 342 A.2d 270 (Me. 1975).

---

[2] *Overruled on other grounds in Greene v. Rothschild*, 68 Wn.2d 1, 6, 402 P.2d 356, 414 P.2d 1013 (1966).

[3] Trend in oral argument and in its statement of additional authorities alluded to a contention that the Court of Appeals in *Bailie* I improperly made "findings". Trend cites *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959) in this proposition. However, in *Thorndike* the court merely stated that it was not proper for the appellate court to substitute its findings for those of the trial court on a disputed issue of fact. This has no application to the Court of Appeals' resolution of *Bailie* I. In the initial trial, the trial court determined that the Bailies failed to prove any damages resulting from the fraud perpetrated against them. The court examined the record and found that there was nothing in the record to support this determination. While the appellate court is properly limited from substituting its view for that of the trial court where a factual decision has been reached below on conflicting evidence, the appellate court owes no deference to a trial court's determination which totally lacks evidentiary support.

Due to the trial court's determination that the Bailies failed to prove any damages from the fraud, the trial court did not deal with the issue of the amount of damages involved. There was therefore no "finding" of the trial court with which the Court of Appeals' subsequent determination of the amount of damages could conflict. The amount of the damages involved was clear from the record on appeal and none of the parties could argue otherwise. *Bailie* I, at 85–86.

Prejudgment interest, on the other hand, is allowed by case law.[4] This allowance is founded on the public policy principle stated in *Hansen v. Rothaus, supra,* that "[t]he plaintiff should be compensated for the 'use value' of the money representing his damages for the period of time from his loss to the date of judgment." The allowance of prejudgment interest, being well established in case law, is not in a substantially different position from the statutory provision for postjudgment interest. While RCW 4.56.110(2) provides that the judgment *shall* bear interest, case law indicates that prejudgment interest in a case involving a liquidated claim, or one that is ascertainable with certainty, *will* be awarded as a matter of public policy. A claimant's entitlement to prejudgment interest in an appropriate case is of the same order as the same party's entitlement to postjudgment interest. Therefore, the statement from *Fulle v. Boulevard Excavating, Inc., supra,* applies and the Bailies' claim may not be precluded by the Court of Appeals' silence on the subject.

## Discussion
### Postjudgment Interest

The Bailies initially presented the argument that the trial court erred in granting Trend's motion for reconsideration and ruling that postjudgment interest on the award would run only from the date of the entry of the judgment on remand from the Court of Appeals (December 1, 1989), rather than from the date judgment was originally rendered in the case (December 4, 1986). However, in their reply brief on appeal, the Bailies have taken the position that the trial court's order which awarded postjudgment interest only from December 1, 1989, was properly decided. They

---

[4]Contrary to Bailies' assertions on appeal, RCW 19.52.010, which provides in pertinent part:

(1) Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of twelve percent per annum where no different rate is agreed to in writing between the parties: . . .

is not the basis on which the cases have provided for prejudgment interest.

now seek prejudgment interest from January 15, 1981, to December 1, 1989, and postjudgment interest thereafter. We find this to be appropriate in view of the position taken by the Bailies in their reply brief.

## CONCLUSION

The ruling of the trial court is reversed as to the denial of prejudgment interest on the award to the Bailies from Trend. The Bailies are entitled to prejudgment interest against Trend from January 15, 1981, to December 1, 1989. The ruling of the trial court granting postjudgment interest from December 1, 1989, is affirmed. We remand to the trial court for entry of judgment consistent with this opinion.

SCHOLFIELD and BAKER, JJ., concur.

Reconsideration denied June 18, 1991.