

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

SARAH JOHNSON, as personal )
representative of THE ESTATE OF )
PHILIP CUNNINGHAM, )
         )    No. 74848-3-I
           Appellant, )
         )    DIVISION ONE
   v. )
         )
CITY OF TACOMA, a municipality, )    UNPUBLISHED OPINION
         )
           Respondent. )    FILED: June 6, 2016

SPEARMAN, J. — Sarah Johnson, as personal representative of the estate of Philip Cunningham, appeals the trial court's order granting summary judgment to the City of Tacoma. She argues that genuine issues of fact exist as to whether the City misrepresented its retirement plan to Cunningham and whether the City breached its retirement contract with Cunningham. Finding no error, we affirm.

## FACTS

Cunningham worked for the City of Tacoma for nearly 30 years. He contributed about $170,000 to the City's mandatory retirement plan, the Tacoma Employees Retirement System (TERS). TERS is a defined benefit plan funded by employer and employee contributions. After employment for a given number of years, TERS guarantees the retiree a fixed benefit described as an "annuity" or "pension." Clerk's Papers (CP) at 10, 52, 55, 62.

Cunningham received a TERS account statement at the end of each year. The statements showed the amount of his contributions to the retirement plan and informed Cunningham that he could withdraw his contributions if he left employment with the City. The statements also showed that Cunningham had not designated a beneficiary for his TERS account. The December 2011 statement informed Cunningham that, in the absence of a designated beneficiary, his estate was the default beneficiary.

In the fall of 2013, Cunningham requested information about retirement. He submitted a "Retirement Estimate Request" form to learn the amount of benefits he could receive under the City's different retirement plan options. The City prepared a retirement estimate with information about five plan options.

The first listed option is the "Unmodified Benefit." The estimate states: "The Unmodified Benefit will pay you approximately $2,834.45 per month for your life. No benefit will be paid to a beneficiary after your death." CP at 38. The estimate then describes four other options that offered reduced monthly payments to Cunningham but provided for a benefit to a beneficiary after Cunningham's death. Under options A and B, the beneficiary receives the balance, if any, of Cunningham's contributions to the TERS plan. Under options C5 and C10, the beneficiary receives a defined benefit for a fixed period of time. The cover letter that accompanied the estimate advised Cunningham to review the options carefully as the selection is irrevocable. The letter also referred Cunningham to the TERS website for further information and recommended that he schedule a retirement counseling session with a benefits specialist.

2

Cunningham scheduled a retirement counseling session with Marni Moore, a City benefits specialist. Cunningham talked with employee Cecelia Moullet in the reception area while he was waiting for Moore. According to the City, Cunningham told Moullet that he had selected the unmodified option. Moullet asked him if he was sure that was the option he wanted. She explained that it takes about 10 to 12 years of retirement to exhaust a retiree's contributions to TERS and that if Cunningham died within that timeframe the balance of his contributions would stay in the TERS plan. Cunningham allegedly stated that he was sure of his choice and he did not want to leave any of his retirement contributions to anyone. Cunningham then attended his meeting with Moore.

During a retirement counseling session, Moore's role is to explain the options to the retiree. Moore is not a financial adviser and she does not try to choose a retirement plan for the retiree. Moore uses a "counseling checklist" to address several topics, including the retirement estimate and the retirement plan options. On the checklist from Cunningham's session, the unmodified plan option is circled. Each topic is initialed by Moore and the form is signed and dated by Cunningham.

Moore filled out Cunningham's retirement application during the counseling session. On the application, the unmodified plan option is selected. Moore stated that Cunningham had already decided to select the unmodified option when he arrived for the counseling session. About 20 percent of City employees select that option and Moore did not find the choice surprising. Moore stated that she explained the option and specifically told Cunningham that under

the unmodified option no one would receive the balance of his TERS contributions if he died during retirement. Moore asked Cunningham if he was sure he did not have someone he wanted to leave his retirement account to. Cunningham allegedly replied that he did not want his family "'to get a dime.'" CP at 66.

The retirement application instructs applicants to designate at least one primary beneficiary and states that "[y]our primary beneficiary(ies) will receive any monies in your account at the time of your death." CP at 47. On Cunningham's application, the word "estate" is handwritten in the beneficiary designation space. Id. Moore stated that she explained to Cunningham that a pro-rata payment for the number of days Cunningham was alive in the month of his death would be paid to his estate. The application is signed and dated by Cunningham. The text in the signature block acknowledges that he "made this decision after receiving the foregoing information including a printout of [his] retirement options benefits estimate." CP at 48.

After Cunningham submitted his application, he received a "retirement confirmation." CP at 52-55. The confirmation reiterates that a retiree's selection of a plan option is irrevocable and refers the retiree to the TERS website for further information. The confirmation also explains that pension payments are distributed on the last business day of each month.

Cunningham retired on January 1, 2013. He died by suicide on February 10, 2013. The City informed Cunningham's estate that, under the retirement option he had selected, the estate was entitled only to the retirement benefit

4

accrued during the month of Cunningham's death. The City calculated the pro-rata benefit for the number of days Cunningham was alive in February 2013 and distributed that amount to Cunningham's bank account.

Cunningham's will, which he executed before beginning employment with the City of Tacoma, named his daughter Sarah Johnson as the executor and sole beneficiary of his estate. Cunningham had told Johnson that she would inherit everything when he died. However, Cunningham never discussed specific investments with Johnson or mentioned his retirement plan.

Johnson brought this action against the City as personal representative of Cunningham's estate. She asserted that Cunningham's estate was entitled to the residue of the contributions Cunningham had paid into the retirement system. Johnson argued that Cunningham's will showed that he had a long-standing plan to leave everything to his estate, the City had informed Cunningham that his estate was his default beneficiary, and Johnson confirmed his intent to leave his retirement contributions to his estate by designating his estate as beneficiary on his retirement application. Johnson asserted claims for negligent or intentional misrepresentation, breach of contract, and unjust enrichment. She also sought a declaration that the retirement benefits Cunningham was entitled to during his life were properly payable to his estate.

The City moved for summary judgment. It attached, among other documents, Moore's affidavit testifying to her meeting with Cunningham and statements he made during that meeting. Johnson moved to strike the affidavit as barred by the Deadman's Statute.

The trial court granted Johnson's motion to strike and granted the City's motion for summary judgment. Johnson appeals. The City cross-appeals the trial court's application of the Deadman's Statute to bar Moore's affidavit.

## DISCUSSION

The City's cross-appeal is only properly before this court in the event that we remand. RAP 2.4. Accordingly, we first consider Johnson's argument that the trial court erred in dismissing her claims on summary judgment. We consider the evidence before the trial court without reference to the excluded affidavit.

In reviewing a grant of summary judgment, any matters argued below but not raised on appeal are deemed abandoned. GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 134, 317 P.3d 1074 review denied, 181 Wn.2d 1008, 335 P.3d 941 (2014) (citing Coggle v. Snow, 56 Wn. App. 499, 512, 784 P.2d 554 (1990)). Because Johnson does not discuss her claim for declaratory judgment on appeal, it is abandoned.

We review the trial court's summary dismissal of Johnson's other claims de novo. Podbielancik v. LPP Mortg., Ltd., 191 Wn. App. 662, 666, 362 P.3d 1287 (2015) (citing Camicia v. Howard S. Wright Constr. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). To survive a motion for summary judgment, the nonmoving party "must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists." Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1

(1986). We view all evidence in the light most favorable to the nonmoving party. Columbia Cmty. Bank v. Newman Park, LLC, 177 Wn.2d 566, 573, 304 P.3d 472 (2013).

Johnson's claims concern Cunningham's contributions to the City's retirement system. TERS is a defined benefit retirement plan. Unlike a defined contribution plan, a defined benefit plan guarantees the participant a fixed periodic payment for life. Washington Federation of State Employees v. State, 107 Wn. App. 241, 245 n.5, 26 P.3d 1003 (2001) (quoting Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 439, 119 S.Ct. 755, 142 L. Ed. 2d 881 (1999)). A defined benefit plan is a "general pool of assets," not a collection of individual accounts. Hughes Aircraft Co., 525 U.S. at 439 (citing Commissioner v. Keystone Consol. Industries, Inc., 525 U.S. 152, 154, 113 S.Ct. 2006, 124 L. Ed. 2d 71 (1993)). The employer bears the risk of investment and guarantees the distribution of the fixed benefit even if the value of the plan's investments decline. Id. at 440. Employees who participate in a defined-benefit plan do not share in any decrease or surplus in the value of plan assets. Id.

Johnson first argues that the trial court erred in dismissing her claims for negligent or intentional misrepresentation. She argues that the City negligently or intentionally conveyed to Cunningham the message that the residue of his retirement contributions would pass to his estate upon his death.

To establish negligent misrepresentation, a plaintiff must prove that the defendant supplied false information and the plaintiff reasonably relied on that false information. Ross v. Kirner, 162 Wn.2d 493, 499, 172 P.3d 701 (2007)

(citing Lawyers Title Ins. Corp. v. Baik, 147 Wn.2d 536, 545, 55 P.3d 619 (2002).

Intentional misrepresentation requires proof that the defendant knowingly

misrepresented a material fact and the plaintiff reasonably relied on the

misrepresentation. West Coast, Inc. v. Snohomish Cnty., 112 Wn. App. 200, 206,

48 P.3d 997 (2002).

Johnson asserts that the City misrepresented the benefit due to

Cunningham's estate through the 2011 TERS account statement, which informed

Cunningham that in the absence of a specifically designated beneficiary, his

estate was the default beneficiary of his retirement account. The statement,

which is one double-sided page, summarizes Cunningham's employment details,

outlines the eligibility requirements to receive a pension, and explains that an

employee may withdraw TERS contributions upon leaving employment with the

City. The statement does not discuss retirement options, guarantee a retirement

benefit, or discuss the status of an employee's contributions after retirement. The

statement refers the employee to the TERS plan website and the TERS office to

receive further information.

The statement does not include all the information necessary for an

employee to fully understand the TERS plan or the status of contributions to that

plan before and after the employee retires. But the statement contains no

misrepresentation. We conclude that the 2011 TERS account statement does not

raise a question of material fact as to whether the City misrepresented the benefit

that Cunningham's estate would receive.

Johnson also relies on Cunningham's application for retirement, on which the word "estate" is handwritten in the space to designate a beneficiary. Johnson asserts that the City misrepresented the effect of the beneficiary designation and that Cunningham may have been under the impression that his estate would receive the balance of his retirement contributions.

The retirement application instructs the applicant to designate at least one beneficiary and states that the beneficiary will receive "any monies" in the retiree's account. CP at 47. The application does not explain how the account balance is determined or guarantee that there will be "any monies" in the account. Id. The application also contains check boxes to select one of several retirement plan options. The form does not explain these options, but incorporates by reference the benefits estimate. The estimate details the monthly benefit payable to the retiree under each option and the after-death benefit, if any, to the retiree's beneficiary. The estimate states that under the unmodified option "no benefit will be paid to a beneficiary" after the retiree's death. Under options A and B, on the other hand, a beneficiary receives the balance, if any, of a retiree's contributions to his TERS account.

Like the 2011 TERS account statement, the application for retirement does not contain a full explanation of the TERS plan, the retirement options, or what happens to an employee's contributions to the TERS plan after the employee's death. The requirement to designate a beneficiary, in conjunction with the selection of the unmodified benefit, may cause confusion. But the referenced benefits estimate clearly states that, in contrast to other plan options,

under the unmodified benefit a beneficiary does not receive the residue of an employee's contributions to the TERS plan. The application and estimate do not falsely represent that Cunningham's estate would receive the balance of his retirement contributions.

We conclude that the 2011 TERS account statement and the retirement application do not raise a question of material fact as to whether the City provided false information concerning the distribution of Cunningham's retirement contributions. The trial court properly dismissed Johnson's claims for negligent and intentional misrepresentation on summary judgment.

Johnson next argues that the trial court erred in dismissing her breach of contract claim. A mandatory retirement or pension plan is a contract interpreted according to the ordinary rules of contract construction. Jacoby v. Grays Harbor Chair & Mfg., 77 Wn.2d 911, 916, 468 P.2d 666 (1970)). A contract term is ambiguous when it is susceptible to more than one reasonable interpretation. American Nat. Fire Ins. Co. v. B & L Trucking and Const. Co., Inc., 134 Wn.2d 413, 428, 951 P.2d 250 (1998) (citing Morgan v. Prudential Ins. Co., 86 Wn.2d 432, 435, 545 P.2d 1193 (1976)). The meaning of an ambiguous term may be ascertained from the contract as a whole as well as extrinsic evidence. Id.

Johnson argues that the retirement application is ambiguous on its face because the selection of the unmodified option is inconsistent with the designation of "estate" as Cunningham's beneficiary. Appellant's Brief at 11; Appellant's Reply Brief at 8-9. Johnson argues that this ambiguity must be

construed against the City and the residue of Cunningham's contributions to his TERS account should therefore be awarded to the estate.

The beneficiary designation on the application states that the beneficiary will receive "any monies in your account" at death. CP at 47. The application does not explain what account it is referring to or how it determines if "any monies" remain in that account. Id. The City argues that a retiree who begins drawing benefits under the unmodified option no longer has an individual TERS account but has only a guaranteed monthly pension for life. The only "monies" in the retiree's "account" are thus those pension benefits accrued but not distributed during the last month of the retiree's life. Id.

Johnson appears to argue that, by its plain language, the application guarantees that the beneficiary will receive the residue of the retiree's TERS contributions. But this interpretation is inconsistent with the majority of retirement options. Options A and B guarantee a beneficiary the residue, if any, of the retiree's TERS contributions, but the other options contain no such provision. And the unmodified option expressly provides for no benefit to a beneficiary after the retiree's death.

Reading the application together with the explanation of plan options in the benefits estimate, we conclude that the phrase "any monies in your account" is not reasonably susceptible to the interpretation that Johnson proposes. The application and referenced estimate clearly differentiate between those retirement options that distribute the residue of a retiree's TERS contributions

11

and those that do not. The "monies" in the retiree's "account" are logically determined by reference to the terms of the selected retirement option.

We conclude that the language of the pension contract is not ambiguous. The City was contractually obligated to make pension payments to Cunningham during his life and to pay his estate "any monies" due under the terms of his selected retirement option. Johnson produced no evidence to suggest that the City breached this contract. The trial court properly dismissed Johnson's breach of contract claim.

Johnson next asserts a claim for unjust enrichment in the alternative that we determine that Cunningham's retirement plan was not contractual. She argues that "the ambiguities in the contractual documents" could lead us to conclude that there was no final agreement between the City and Cunningham. Appellant's Reply Brief at 10. But there is no ambiguity in the pension documents that prevented contract formation. Because the pension is governed by contract, we do not consider Johnson's claim in equity. Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008) (citing Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc., 61 Wn. App. 151, 160, 810 P.2d 12 (1991)) (stating that unjust enrichment may be asserted where there is no contractual relationship).

Finally, Johnson asserts that the beneficiary designation in Cunningham's retirement application is a contract provision that takes effect at death and is thus testamentary in nature. Johnson argues that the application does not meet the requirements for a will and cannot control over the will Cunningham properly executed in 1983. Johnson asserts that Cunningham's retirement contributions

should have been distributed with his other probate assets. This argument is without merit.

A pension plan is a nonprobate asset. RCW 11.02.005(10). A nonprobate asset may be controlled through a will, but only if the asset is specifically referred to in the owner's will. RCW 11.11.020. Johnson makes no argument that Cunningham's will specifically referred to his TERS account or to his nonprobate assets generally.

In addition, under the terms of his selected retirement option, once Cunningham retired, he only had a claim to a monthly defined benefit during his lifetime, not to the TERS contributions he made during employment. After retirement, Cunningham no longer had an ownership interest in his retirement contributions and thus had no interest to devise through his will.

We conclude that the trial court properly granted the City's motion for summary judgment. We accordingly do not reach the City's cross-appeal concerning the application of the Deadman's Statute to bar the affidavit of the City's benefits specialist.

Affirm.

WE CONCUR:

Spearman, J.

Leach, J.

Cox, J.