[No. 19798–3–I.   Division One.   December 27, 1988.]

BAILIE COMMUNICATIONS, LTD., ET AL, *Appellants*, v. TREND BUSINESS SYSTEMS, *Respondent*.

*Lee R. McNair,* for appellants.

*Lance C. Dahl* and *Shidler, McBroom, Gates & Lucas,* for respondent.

WEBSTER, J.—Ronald and Nada Bailie appeal a judgment dismissing their guaranty and fraud claims against Trend Colleges, Inc. (formerly Trend Business Systems, Inc.). We reverse, holding that Trend has been unjustly enriched in the amount of $175,000 and that the Bailies are entitled to restitution.

## FACTS

On December 1, 1979, the Bailies assigned their one-third interest in a Hawaiian condominium to Suburban Investment Corporation, which already owned the remaining two-thirds. Suburban agreed to pay $175,000 over a 6-year period. The Bailies retained the right to use the condominium for 8 weeks each year until the entire balance was paid.

Harold T. Wosepka, president of Trend Colleges, Inc., guaranteed Suburban's payment obligation in a letter dated December 7, 1979. Wosepka used Trend's letterhead and signed "Harold T. Wosepka, President," but the text of his letter did not mention Trend. Instead, Wosepka wrote that he would "personally guarantee" Suburban's obligation.

The Bailies used the condominium pursuant to the usage agreement up through November 30, 1980, when the first installment of $29,000 to $30,000, representing $5,000 in principal, became due. Neither Suburban nor Wosepka paid this amount or any other portion of the purchase price.

Suburban and Wosepka told the Bailies that Suburban could not pay the installment when it became due. However, they assured the Bailies that the Bailies would receive $175,000 from the proceeds of a $300,000 mortgage of the condominium in complete satisfaction of Suburban's assignment obligation. The only requirement was that the Bailies cosign Suburban's mortgage. The mortgagee

demanded that the Bailies cosign the mortgage because the Bailies remained record holder of one–third of the condominium.

The assignment required the Bailies "upon demand by Suburban" to "provide Suburban with any additional document, instrument, assignment, or conveyance which Suburban shall require in order to obtain an insurable title". However, Suburban did not rely on this provision. Instead, Suburban and Wosepka fraudulently induced the Bailies to cosign the mortgage by intentionally misrepresenting Suburban's inability to pay and Suburban's intent to accelerate payment from the mortgage proceeds. As an additional inducement, Suburban signed a written memorandum of the usage agreement, which was originally oral.

The Bailies discovered in June 1981 that Wosepka infused the entire $300,000 into Trend. Suburban and Wosepka intended this result originally, because Trend desperately needed working capital. The Bailies filed suit in July 1983, when the mortgagee foreclosed. They named Suburban, Wosepka, and Trend, among others, as defendants.

The Bailies asserted two theories of liability against Trend. First, they claimed that Wosepka bound Trend with the guaranty letter, in view of an alleged prior understanding that Trend would guarantee Suburban's obligation. Second, the Bailies argued that Trend was a participant in Suburban and Wosepka's fraud.

The Bailies prevailed against Suburban on its assignment contract and against Wosepka on his guaranty letter. However, the court dismissed the claim against Trend. First, the court ruled that Wosepka's letter did not bind Trend. Second, the court found that the Bailies were not damaged by Suburban and Wosepka's fraud. Additionally, the court ruled that Wosepka was not acting on behalf of Trend when he and Suburban perpetrated the fraud.

## Guaranty Claim

The intent of the parties controls when determining whether the guaranty letter of Trend's president binds the corporation. The inquiry begins by examining the face of the letter to ascertain the parties' intentions. Only if the letter is ambiguous may extrinsic evidence be used to clear up any ambiguity. *Griffin v. Union Sav. & Trust Co.,* 86 Wash. 605, 610, 150 P. 1128 (1915).

In *Griffin,* the court held that a letter of guaranty written on company letterhead and signed "O. B. Wooley, Manager", was ambiguous. The letter did not identify the guarantor, but merely read, "Dear Sir: This is to guarantee payment to you". *Griffin,* at 606.

In contrast, the letter here clearly identifies the guarantor. The letter reads, "I guarantee" and "I will personally guarantee". Such language imports Wosepka's personal liability alone, because the text of the letter does not mention Trend. It does not matter that Wosepka wrote his guaranty on Trend's stationery or that he appended "President" to his signature. Parol evidence suggesting Trend's liability is not even admissible in these circumstances. *See Earlston Coal Co. v. Huntington Nat'l Bank,* 63 F.2d 329 (6th Cir.), *cert. denied,* 290 U.S. 637 (1933).[1]

Even when parol evidence is considered, the record contains substantial evidence supporting the court's finding that Trend is not a guarantor. Bailie testified that he had years of experience with personal and corporate leases, and that he knew the difference between leases that created personal obligations and those that created corporate liability. Against this background Wosepka's letter supports the inference that Bailie intended only to secure Wosepka's personal guaranty. In addition, Wosepka testified that he

---

[1]The many Washington cases cited by the parties in support of their conflicting contentions are inapposite. In particular, neither *Key v. Cascade Packing, Inc.,* 19 Wn. App. 579, 582–83, 576 P.2d 929 (1978) nor *Puget Sound Nat'l Bank v. Selivanoff,* 9 Wn. App. 676, 514 P.2d 175, 70 A.L.R.3d 1270 (1973) addressed the question of corporate liability presented here.

drafted the guaranty letter as such because Bailie specifically requested Wosepka's personal guaranty without mentioning Trend.

The Bailies argue in rebuttal that they received other letters from Wosepka wherein Wosepka used Trend's letterhead and did not append "President" to his signature. They argue that Wosepka's guaranty letter, when compared to these letters, reveals an intention on his part to bind Trend. In fact, Wosepka wrote the guaranty letter in December 1979 and the other letters in 1982 or 1983. The gap in time significantly diminishes the probative value of the Bailies' comparison, as the trial court concluded. The Bailies should have chosen contemporaneous letters for their comparison, or at least established that none were available.

## Fraud Claim

We next address the court's conclusion that Suburban and Wosepka's fraud did not damage the Bailies. The trial court apparently believed that the only damage possibly sustained by the Bailies was loss of their ability to collect a judgment for overdue amounts from Suburban's assets. However, if Suburban's breach was material, the Bailies also lost a right to withhold their signatures from Suburban's mortgage.

"A material failure by one party gives the other party the right to withhold further performance as a means of securing his expectation of an exchange of performances." Restatement (Second) of Contracts § 241, comment *e* (1981) (hereinafter Restatement 2d). A material breach suspends the injured party's duties until the breaching party cures the default. Restatement 2d §§ 237, 241. The breaching party has a reasonable time to cure, after which the injured party may either sue for total breach or rescind and obtain restitution. Restatement 2d §§ 242, 243, 373.

"Restitution is an alternative remedy to damages for breach of contract." *Dravo Corp. v. L.W. Moses Co.,* 6 Wn. App. 74, 90, 492 P.2d 1058 (1971). The only limitation is

that the injured party have remaining duties to perform under the contract. *Dravo*; Restatement 2d § 373(2).

At the time of Suburban's breach, the Bailies had not yet fully performed. They had yet to clear title in Suburban. Assuming Suburban's breach was "material," the Bailies could have left Suburban with unmarketable title. They could have thereby prevented the mortgage or any other transfer to a bona fide purchaser. Eventually, they could have rescinded the contract and recovered as restitution the one–third condominium interest they assigned.

## Materiality of Breach

The ultimate question, then, with respect to whether the Bailies lost anything as a result of Suburban and Wosepka's fraud, is whether Suburban's breach was material. This issue is reviewable as a question of fact. *See Willener v. Sweeting,* 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

The trial court listed several reasons in support of its finding that Suburban's delay was not a material breach. The court noted (1) that Suburban had fully performed under the oral usage agreement, (2) that only a first installment of $29,000 to $30,000 was due, and (3) that time was not of the essence of the agreement. Substantial evidence supports all of these reasons.

However, we cannot agree with the trial court that the reasons support its finding. First, Suburban did not tender any affirmative act of performance by letting the Bailies use the condominium because Suburban had not yet paid anything for the Bailies' interest. Second, the court focused on the relatively small amount due in comparison to the total purchase price although "no simple rule based on the ratio of the one to the other can be laid down". Restatement 2d § 241, comment *b.* Third, although time was not of the essence, this means only that the Bailies' duties under the assignment were not discharged. *See* Restatement 2d § 242(c). The Bailies still had a right to suspend their performance if Suburban's breach was material. *See* Restatement 2d §§ 237, 241, 242, comment *b.*

We conclude based on Wosepka and Suburban's own conduct, which demonstrates unequivocally that they considered Suburban's breach material, that Suburban's delay in performance was a material breach as a matter of law. Suburban and Wosepka would not have needed to resort to fraud to procure the Bailies' signatures if they believed that the Bailies had a duty to clear title. Since Suburban did not even "demand" performance under the assignment, no contractual duty could have arisen requiring the Bailies to cosign Suburban's mortgage.

The Restatement of Contracts confirms our conclusion that the Bailies had no duty to cosign Suburban's mortgage. The Restatement lists five factors that should be considered in determining whether a breach is material. They are: (1) whether the breach deprives the injured party of a benefit which he reasonably expected, (2) whether the injured party can be adequately compensated for the part of that benefit which he will be deprived, (3) whether the breaching party will suffer a forfeiture by the injured party's withholding of performance, (4) whether the breaching party is likely to cure his breach, and (5) whether the breach comports with good faith and fair dealing. *See* Restatement 2d § 241(a)–(e). These factors are to be viewed "as of the time for performance and in terms of the actual failure." Restatement 2d § 237, comment *b*.

Together, the five factors listed in the Restatement demand a finding of materiality. First, Suburban's breach clearly deprived the Bailies of a benefit they reasonably expected. The Bailies had to wait a year before receiving any payment. Suburban had that long to begin paying it. When Suburban failed to pay even the first installment, the Bailies had reason to demand a cure.

Second, the Bailies could not be adequately compensated for their loss. Suburban and Wosepka did not pay any of the purchase price. Both are apparently judgment proof now. The Bailies lost any security that the usage agreement represented when they cosigned Suburban's mortgage. The

mortgagee thereby became a bona fide purchaser of the entire condominium.

Third, Suburban did not face any possibility of forfeiture in the event the Bailies refused to cosign the mortgage. Suburban had parted with nothing, so it had nothing to lose. Instead, it was the Bailies who stood to lose and who did in fact lose when the mortgagee foreclosed.

Fourth, the early character of Suburban's breach made a cure unlikely. The earlier the breach, the more likely that the breach is material. Restatement 2d § 241, comment *d*. When a breach occurs early, before the breaching party has relied in any way to his detriment on the contract, nonpayment suggests financial weakness and an inability to cure. Restatement 2d § 241, comment *e*. Here, Suburban breached early, before it tendered any portion of the purchase price. Suburban's failure to pay its first installment foreboded its ultimate total failure of performance.

Fifth, and most importantly, Suburban's unwillingness to cure demonstrated bad faith. Suburban could have paid the Bailies. The Bailies cosigned Suburban's mortgage believing that Suburban could not. When Suburban received the $300,000 mortgage proceeds, it could easily have set aside one–tenth for the Bailies, representing the $21,000 to $30,000 due under the assignment. Instead, Suburban permitted Wosepka to use the entire $300,000 for Trend's benefit. Particularly in the case of a "wilful" breach, it is rare that the breaching party can hale the other into court to enforce the agreement. *See* Restatement 2d § 241, comment *f*, § 237, Illustrations 4, 7. In the instant case, it is inconceivable that Suburban could have forced the Bailies to perform under the assignment when Suburban refused in bad faith to reciprocate.

The "standard of materiality . . . is necessarily imprecise and flexible." However, it "is to be applied . . . in such a way as to further the purpose of securing for each party his expectation of an exchange of performances." Restatement 2d comment *a*. The trial court misapplied the standard of materiality, and therein it erred.

## Unjust Enrichment

Having found as a matter of law that Suburban's breach was material, it follows that the Bailies were damaged when they cosigned Suburban's mortgage. They lost a right to withhold their signatures from Suburban's mortgage and ultimately to rescind. Trend received the proceeds of the Bailies' lost right in the form of the mortgage proceeds.

Trend's liability for unjust enrichment does not depend on the capacity in which Wosepka uttered his misrepresentation. Even third parties who innocently acquire property must sometimes surrender it if the property was fraudulently obtained. *See* Restatement of Restitution § 123 (1937); *see also* Restatement of Restitution §§ 3, 13, 17, 28, 63, 64, 107 (1937).

Trend's enrichment is unjust for two alternative reasons. First, Trend received and retained the proceeds of fraud knowing of the Bailies' rights. Trend knew of the fraud through Wosepka because Wosepka was Trend's president and sole shareholder. *See* 3 W. Fletcher, *Private Corporations* §§ 796, 799 (1986). Second, Trend did not pay value for any of the mortgage proceeds. Either of these reasons makes Trend's otherwise lawful acquisition and retention of the proceeds unjust. *See* Restatement of Restitution § 123 (1937). To the extent that Trend has changed its position since it received the mortgage proceeds, Trend has only itself to blame. Restatement of Restitution §§ 69(3)(b), 142(3)(b) (1937).

## Extent of Recovery

Suburban, Wosepka, and the Bailies agreed that the Bailies' right to withhold their signatures from Suburban's mortgage was worth $175,000. Trend knew of this agreement through Wosepka, its president and sole owner. *See* 3 W. Fletcher, *supra.* Trend cannot now argue that the Bailies lost less than $175,000, because the Bailies surrendered their signatures believing that they would receive this money.

Nor should the Bailies be heard to claim that their loss exceeds $175,000. They acknowledged that this amount would fully satisfy them, even though their ultimate right of rescission and restitution may have been more valuable.

We therefore reverse and remand for entry of judgment against Trend for $175,000.

WILLIAMS and WINSOR, JJ., concur.

Reconsideration denied July 18, 1989.

Review denied at 113 Wn.2d 1025 (1989).