IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| LM15 LLC, a Washington limited liability company; AJMER SINGH, an individual; VARINDERPAL TOOR, an individual,<br><br>     Respondents,<br><br>     v.<br><br>GIRMAY, INC., a Washington corporation; AMARE GIRMAY and JANE DOE, husband and wife, and the marital community composed thereof,<br><br>     Appellants, | No. 80112-1-I<br><br><br><br><br><br>UNPUBLISHED OPINION |

VERELLEN, J. — The testimony of the purchasers who signed an option to purchase property the same day they signed a lease as a tenant of that property substantially supports the trial court's finding that the option and lease were part of the same transaction, and that finding in turn supports the trial court's conclusion that the option was supported by adequate consideration. Substantial evidence also supports the trial court's determination that the purchasers did not materially breach the lease or the option agreement and that strict enforcement of the option requirements would result in an inequitable forfeiture of the option.

As the prevailing party at trial and now on appeal, the purchasers are entitled to attorney fees under the lease and option agreements.

Therefore, we affirm the trial court's order for specific performance of the option to purchase and its award of attorney fees. We also award the purchasers attorney fees on appeal.

## FACTS

Varinderpal Toor, Reena Toor, and Ajmer Singh formed LM15, a limited liability company.[1] In 2015, the Toors and Singh learned Amare Girmay was selling commercial property. The property was in disrepair and was occupied by an unbranded gas station, a mini-mart, an auto repair shop, and an espresso stand. After the Toors and Singh met with Girmay, LM15 executed three documents regarding the property: a "Commercial Lease Agreement", an "Option to Purchase Commercial Real Property, and a "Notice to Remodel." Soon after, Singh sold his interest in LM15 to Varinderpal but remained involved in the interactions with Girmay.

The lease term began on November 1, 2015 and ended on October 31, 2020. The lease prohibited subletting without Girmay's prior written consent. The option to purchase document provided that the option had to be exercised before October 31, 2020, the purchase price was $1,150,000, and LM15 had to submit a letter of loan approval. The option would automatically terminate in the event that LM15 breached the lease. The notice to remodel provided for unlimited remodeling by LM15.

---

[1] Because Varinderpal and Reena have the same last name, we refer to them individually by their first names for clarity.

The Toors communicated often with Girmay about LM15's plans to remodel the mini-mart and brand the gas station. Girmay approved of the plans and offered his suggestions. LM15 invested approximately $550,000 in renovating the property.

In 2017, LM15 decided to exercise the option to purchase. The Toors presented Girmay with LM15's written notice of its intention to exercise the option and told him LM15 intended to pay cash. Girmay acknowledged receipt of the notice and did not express any concerns, but he was not ready to close on the sale because he wanted to locate another property to use in a 1031 tax free exchange.[2] Girmay encouraged LM15 to complete the remodeling while it waited. LM15 branded the gas station as a Shell station.

The Toors were concerned about waiting to close on the purchase of the property because LM15 was paying for utilities and other overhead. Girmay suggested renting space to a car wash or a food truck to collect rent in the meantime. As a result, in January 2018, LM15 sublet a portion of the property to a taco truck. Girmay was aware of the sublease and helped arrange a power connection for the taco truck.

In March 2018, Girmay terminated the option to purchase because LM15 breached the lease agreement. LM15 sued Girmay to enforce the option to purchase. The trial court ordered Girmay to close on the option and to convey the property to LM15. The trial court also awarded attorney fees to LM15.

---

[2] A 1031 exchange requires "that property be identified and that [the] exchange be completed not more than 180 days after transfer of exchanged property." 26 U.S.C.A. § 1031(3) (2017).

Girmay appeals.

## ANALYSIS

I.  Consideration for the Option to Purchase

Girmay contends the option to purchase lacked consideration because the lease and the option were separate contracts.

Determining the parties' intentions is a question of fact.[3]  "Our review is limited to determining whether substantial evidence supports the challenged findings of fact and, in turn, if the supported findings and unchallenged findings support the court's conclusions of law."[4]  "'Evidence is substantial if it is sufficient to convince a reasonable person of the truth of the finding.'"[5]  "'So long as this substantial evidence standard is met, a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently.'"[6]  The trier of fact is solely responsible for making credibility determinations.[7]  Unchallenged findings are verities on appeal.[8]  We review conclusions of law de novo.[9]

---

[3] Martinez v. Miller Indus., Inc., 94 Wn. App. 935, 943, 974 P.2d 1261 (1999).

[4] State v. Coleman, 6 Wn. App. 2d 507, 516, 431 P.3d 514 (2018).

[5] Id. (quoting State v. Klein, 156 Wn.2d 102, 115, 124 P.3d 644 (2005)).

[6] Id. (internal quotation marks omitted) (quoting Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003)).

[7] Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003).

[8] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 819, 828 P.2d 549 (1992).

[9] In re Estate of Haviland, 162 Wn. App. 548, 561, 255 P.3d 854 (2011).

"'An option to purchase property is a contract wherein the owner, in return for valuable consideration, agrees with another person that the latter shall have the privilege of buying the property . . . upon the terms and conditions expressed in the option.'"[10]

> "[T]he terms of agreement may be expressed in two or more separate documents, some of these containing promises and statements as to consideration, and others . . . embodying performances . . . . In every such case, these documents should be interpreted together, each one assisting in determining the meaning intended to be expressed by the others."[11]

When an option contract is supported by consideration, the result is an agreement binding upon the optionor.[12] "[C]onsideration will support and render a promise enforceable if [there] was something bargained for."[13]

Girmay challenges two findings of fact related to consideration. Finding of fact 8 is that "[everyone] understood that the Toors and Mr. Singh were only interested in purchasing the gas station business . . . if they would be allowed to buy the property."[14] Finding of fact 10.6 is the "[l]ease and [o]ption [a]greement

---

[10] RSD AAP, LLC v. Alyeska Ocean, Inc., 190 Wn. App. 305, 318, 358 P.3d 483 (2015) (quoting Whitworth v. Enitai Lumber Co., 36 Wn.2d 767, 770, 220 P.2d 328 (1950)).

[11] Pelly v. Panasyuk, 2 Wn. App. 2d 848, 868, 413 P.3d 619 (2018) (first alteration in original) (quoting Kelley v. Tonda, 198 Wn. App. 303, 311-12, 393 P. 3d 824 (2017)).

[12] RSD AAP, 190 Wn. App. at 318.

[13] Huberdeau v. Desmarais, 79 Wn.2d 432, 440, 486 P.2d 1074 (1971) (internal quotation marks omitted).

[14] Clerk's Papers (CP) at 304.

were part of the same transaction . . . . [E]ach contract was dependent on, and provided consideration for, the other."[15]

Here, there was substantial evidence to support the finding that the members of LM15 always intended to exercise the option and that the lease and the option to purchase documents were part of the same transaction. Reena testified that the option was "part of the deal . . . that everyone [understood LM15 would be] able to buy the property."[16] Both Varinderpal and Singh testified they were interested in entering the lease only if there was an option to purchase the property. The court found their testimony credible.

Section 15.24 of the lease agreement included a section titled "Option to Purchase" but did not include any text about the option. The option to purchase document provided that the lease was "attached hereto and incorporated herein by reference."[17] And the parties signed the lease and option documents on the same day. Substantial evidence supports findings of fact 8 and 10.6. And those findings in turn support the conclusion of law that there was adequate consideration for the option.

Girmay relies on Ledaura, LLC v. Gould for the proposition that the consideration provided by the lease was insufficient to support the option.[18] But Ledaura is inapposite. Unlike here, the lease and the option to purchase were

---

[15] CP at 306.

[16] RP (May 8, 2019) at 33.

[17] CP at 26.

[18] 155 Wn. App. 786, 789-90, 237 P.3d 914 (2010).

executed separately, each requiring separate consideration.[19]  Additionally, the option in Ledaura mentioned neither the lease nor any of its terms.[20]

Girmay's challenge to the adequacy of consideration fails.

II.  Material Breach of the Lease and Option to Purchase

Girmay argues that LM15 materially breached the lease, constituting a default and precluding the exercise of the option.  Specifically, Girmay contends that LM15 failed to obtain permits for the renovations to the mini-mart, failed to obtain loan approval before giving its notice to exercise the option, and failed to receive his permission before entering the sublease with the taco truck.

A material breach is one that "'substantially defeats the purpose of the contract.'"[21]  "The question of materiality depends on the circumstances of each particular case."[22]

> In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
>
> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

---

[19] Id. at 790-91.

[20] Id. at 790.

[21] DC Farms, LLC v. Conagra Foods Lamb Weston, Inc., 179 Wn. App. 205, 230, 317 P.3d 543 (2014) (quoting Mitchell v. Straith, 40 Wn. App. 405, 410, 698 P.2d 609 (1985).

[22] Id. at 221.

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.[23]

"The 'standard of materiality' . . . is necessarily imprecise and flexible.' However, it 'is to be applied . . . in such a way as to further the purpose of securing for each party his expectation of an exchange of performances.'"[24]

Girmay challenges findings of fact 13 and 13.1. Finding of fact 13 states, "LM15 proceeded to invest substantial sums of money, as well as a great deal of . . . time and energy, in performing substantial renovations and improvements on the subject property."[25] Finding of fact 13.1 states Girmay "told [the Toors and Singh] not to apply for permits, as he was concerned that the [c]ity would discover that other work had been done on the subject property without obtaining permits."[26]

Varinderpal testified that he "did most of the construction" and "put a lot of time into it."[27] He also stated that in total they spent about $550,000 on the remodel. Reena testified that when she questioned Girmay about the ability to

---

[23] RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981).

[24] Bailie Commc'ns, Ltd. v. Trend Bus. Sys., 53 Wn. App. 77, 84, 765 P.2d 339 (1988) (alterations in original) (quoting id., cmt a).

[25] CP at 307.

[26] CP at 307-08.

[27] RP (May 8, 2019) at 110.

renovate the property, he responded, "[Y]eah, [this is] your land, no problem. You can do what you . . . want to do."[28] Reena also testified they executed the notice to remodel after she asked Girmay to confirm their ability to renovate the property. The notice to remodel provided "that LM15 has the full authority to remodel the business."[29] Varinderpal also testified that Girmay often provided them with "guidance" on remodeling decisions.[30] Further, the Toors and Singh all testified that Girmay told them not to obtain permits for the remodeling, stating, "[N]o, no, no, don't go to the [c]ity."[31] Substantial evidence supports findings of fact 13 and 13.1.

Girmay challenges finding of fact 15, that "LM15 originally had planned to purchase the subject property from [him] via a bank loan . . . [but] discovered that none of the commercial banks they contacted would make a loan secured by the subject property, because of contamination issues [with the property.]"[32]

Reena testified that they provided Girmay with written notice stating they were ready to exercise the option at a September 2017 meeting.[33] She testified that at the meeting they explained to Girmay that they were unable to obtain bank financing due to the contamination on the property but showed Girmay

---

[28] Id. at 34.

[29] CP at 24.

[30] RP (May 8, 2019) at 103.

[31] Id. at 42-43.

[32] CP at 308-09.

[33] RP (May 8, 2019) at 45.

$1,200,000 in cash.[34]  Undisputed finding of fact 17 provides Girmay did not express any concerns about the impending cash payment.  Substantial evidence supports finding of fact 15.

Girmay objects to findings of fact 17.2, that he "suggested that LM15 could rent space to organizations doing weekend car washes, and/or to a food truck in order to generate some additional revenue" and finding of fact 17.3, that he "assisted LM15 in contacting the auto repair shop owner to arrange for access so that power could be provided for the taco truck."[35]

But Reena testified that when Girmay asked LM15 to delay the option for his own benefit, he suggested subleasing to either a car wash or a food truck so that they could collect rent in the meantime.[36]  Singh proposed that LM15 sublease to a taco truck, and Girmay expressed his approval.[37]  Varinderpal also testified that Girmay helped them arrange a power connection from the auto repair shop to operate the taco truck.[38]  Substantial evidence supports findings of fact 17.2 and 17.3.

Girmay challenges finding of fact 21, that "[a] preponderance of the evidence established that Girmay's allegations of breach of the [l]ease and the [o]ption

---

[34] Id.

[35] CP at 310.

[36] RP (May 8, 2019) at 49.

[37] Id.

[38] RP (May 8, 2019) at 107.

[a]greement by LM15 were pretextual."[39]  Reena testified that Girmay would often stop by the property during the remodel stating in part, "I'm so happy for you guys, this is looking great."[40]  Varinderpal and Singh also testified that Girmay never objected or stated any concerns as to the renovations they were doing on the property.[41]  Undisputed finding of fact 23 provides Girmay admitted he made a mistake in agreeing to sell the property for $1,150,000, the property was now worth considerably more, and he would require more money to sell the property. Substantial evidence supports finding of fact 21 that Girmay's allegations of a breach were pretextual.

The trial court found that the Toors and Singh were credible that Girmay told them he did not want them to obtain permits, did not object to a cash payment to exercise the option, and did not oppose the sublease to the taco truck.[42]  Because LM15 had permission from Girmay for its actions that diverged from the lease, as the

---

[39] CP at 311.

[40] RP (May 8, 2019) at 57.

[41] RP (May 8, 2019) at 209-10; RP (May 9, 2019) at 234.

[42] The trial court's conclusion of law 8.4 states, "[T]he Court finds the testimony of Reena Toor, Varinderpal Toor and Ajmer Singh, that Mr. Girmay specifically told them they should proceed with the renovation and remodel without seeking permits, to be credible."  CP at 316.  The trial court's conclusion of law 12 states, "The Court found testimony from Varinderpal Toor and Ajmer Singh, that Mr. Girmay was aware and approved of all the work that was being done, and even participated in making suggestions regarding some of the changes, to be credible."  CP at 318.  Credibility determinations are findings of fact.  In re Estate of Palmer, 145 Wn. App. 249, 266, 187 P.3d 758 (2008).  "'Findings of fact labeled as conclusions of law will be treated as findings of fact when challenged on appeal.'"  Karanjah v. Dep't of Soc. & Health Servs, 199 Wn. App. 903, 916, 401 P.3d 381 (2017) (quoting Morgan v. Dep't of Soc. & Health Servs., 99 Wn. App. 148, 152, 992 P.2d 1023 (2000).

trial court concluded, it did not materially breach the lease. The court's legal conclusions are supported by its findings of fact 13, 13.2, 15, 17.2, 17.3, and 21.

III. Equitable Discretion to Prevent Forfeiture

Girmay contends LM15 forfeited its rights to exercise the option because it failed to exercise the option "in the manner provided" by the agreement.[43] Girmay argues that because LM15 failed to provide a letter of loan approval to confirm its financing and was in default under the lease, its exercise of the option was invalid.

"Because the trial court has broad discretionary authority to fashion equitable remedies, we review such remedies under the abuse of discretion standard."[44] A trial court abuses its discretion when its exercise of discretion is based upon untenable grounds or reasons.[45]

As a general rule, option contracts "are to be strictly construed and . . . time is of the essence."[46] However, equitable relief from such strict construction may be warranted in limited circumstances where an inequitable forfeiture would otherwise result.[47] This is because "'forfeitures are not favored in law and are never enforced in equity unless the right thereto is so clear as to permit no denial.'"[48] When the holder

---

[43] Appellant's Br. at 29.

[44] Cornish Coll. of the Arts v. 1000 Virginia Ltd P'ship, 158 Wn. App. 203, 221, 242 P.3d 1 (2010).

[45] Id.

[46] Pardee v. Jolly, 163 Wn.2d 558, 568, 182 P.3d 967 (2008).

[47] Wharf Rest., Inc. v. Port of Seattle, 24 Wn. App. 601, 611, 605 P.2d 334 (1979).

[48] Pardee, 163 Wn.2d at 574 (internal quotation marks omitted) (quoting Hykras v. Knight, 64 Wn.2d 733, 734, 393 P.2d 943 (1964)).

of an option makes valuable permanent improvements to the property with the intention to give its notice to exercise or extend the option, equitable relief may be appropriate.[49]

In Cornish College of the Arts v. 1000 Limited Partnership, Cornish and Virginia Limited executed a commercial sublease agreement with an option to purchase.[50]  The agreement provided that Cornish had less than a year to exercise the option but allowed Cornish to extend the option for an additional year by paying a deposit.[51]  In the meantime, Cornish invested a substantial amount of money to improve the property and always intended to extend the option period.[52]  The chief financial officer of Cornish mailed a check to Virginia Limited to exercise the option.[53]  Virginia Limited's representative rejected the check because it was a few days late and failed to satisfy a multiple signature requirement.[54]  Virginia Limited delivered a

---

[49] Wharf, 24 Wn. App. at 611 (quoting 1 ARTHUR L. CORBIN ON CONTRACTS § 35, at 146-47 (1963)); see also Pardee, 163 Wn.2d at 572 (holding that an equitable grace period may be appropriate when "the optionee was allowed to occupy the property and make substantial improvements thereon"); Borton & Sons, Inc., v. Burbank Properties LLC, No. 97690-2-I, slip op. at 1 (Wash. Sept. 10, 2020), http://www.courts.wa.gov/opinions/pdf/976902.pdf (holding that "granting an equitable grace period is proper only when a lessee makes valuable improvements to property that would result in an inequitable forfeiture if the lessee is not given a grace period").

[50] 158 Wn. App. 203, 211, 242 P.3d 1 (2010).

[51] Id.

[52] Id. at 219.

[53] Id. at 212-13.

[54] Id. at 213.

notice to terminate the lease and ordered Cornish to vacate the premises.[55] This court held that the circumstances justified granting Cornish an equitable grace period.[56] This court reasoned that "[if Cornish were] precluded from purchasing the property, Cornish would forfeit a substantial investment. Given that Cornish at all times intended to exercise the option to purchase, . . . such a substantial forfeiture would be inequitable."[57]

The circumstances here are similar to Cornish College. Like Cornish, LM15 always intended to exercise the option to purchase the property, invested a substantial amount of money in improving the property, and failed to strictly comply with the option agreement. The trial court properly concluded that the breaches by LM15 were minor and did not support forfeiture of the option to purchase.

Girmay argues that granting equitable relief would contradict the Supreme Court's holding in Pardee v. Jolly[58] that option contracts must be strictly construed. But in Pardee, the option to purchase required that "the optionee . . . pay the remaining balance [on the lease] and . . . at the same time, exercise its option to purchase."[59] Instead, Pardee made his final payment and weeks later attempted to exercise his option to purchase.[60] Here, LM15 had until October 31, 2020 to exercise

---

[55] Id.

[56] Id. at 218-19.

[57] Id. at 219.

[58] 163 Wn.2d 558, 182 P.3d 967 (2008).

[59] Id. at 571.

[60] Id. at 570-71.

the option. And Reena testified that in September 2017, they provided Girmay with written notice of their intent to exercise the option. Because LM15 was within the period to exercise the option, <u>Pardee</u> is distinguishable. Further, the court in <u>Pardee</u> only held that Pardee failed to exercise the option within the terms of the contract.[61] But the court remanded for a determination on whether Pardee was entitled to equitable relief.[62]

The record here reveals that LM15 had the funds necessary to purchase in cash and showed it to Girmay. In this setting, the failure to strictly comply with providing a letter of loan approval was minor and inconsequential. It was within the discretion of the trial court to conclude it would be inequitable to grant Girmay the windfall of the sizeable improvements made by LM15 in reliance upon Girmay's ongoing consent, approval, and encouragement to complete the improvements of the property and the branding of the gas station.

## IV. Attorney Fees

Girmay argues the trial court erred by awarding attorney fees to LM15, and LM15 requests attorney fees on appeal. The lease and the option to purchase both provide for attorney fees to the prevailing party in litigation. Because LM15 prevailed before the trial court, the court did not err by awarding attorney fees. And because LM15 prevails on appeal, it is entitled to attorney fees on appeal, subject to compliance with RAP 18.1(d).

---

[61] <u>Id.</u> at 574-75.

[62] <u>Id.</u> at 576.

We affirm.

_____

WE CONCUR:

_____  _____