IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| 1201 W NICKERSON LLC, a Washington limited liability company,<br><br>               Appellant,<br><br>     v.<br><br>SUPERIOR MOTOR CAR CO., LLC, a Washington limited liability company,<br><br>               Respondent. | No. 81252-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Superior Motor Car Co. LLC (Superior) leased a commercial building from 1201 W Nickerson LLC (Nickerson) in Seattle, Washington. The lease prohibited Superior from making exterior modifications to the building without Nickerson's prior approval. Pursuant to this requirement, Superior sought and received Nickerson's approval to install its business sign and to remove a large blue stripe where it intended to install the sign. However, Superior removed the stripe from the entire front of the building. Nickerson issued Superior a notice of default, alleging that Superior's exterior modification without prior approval constituted a material breach. The trial court agreed with Nickerson and, as a remedy, required Superior to forfeit the property. Superior's forfeiture of the property.

Because Superior did not have written consent to remove the entire stripe,

the lease expressly required approval, and Nickerson retained the right to control the property's exterior, the trial court did not err when it concluded that Superior materially breached the lease. In addition, the trial court did not err when it ordered forfeiture because Superior had multiple opportunities to remedy the breach, but it refused. Therefore, we affirm and grant Nickerson reasonable attorney fees on appeal. However, because substantial evidence does not support the trial court's findings that Superior's breach created the potential for water damage and that holes remained on the building's exterior, we remand for the trial court to strike those findings.

## FACTS

Nickerson owns real property at 1201 West Nickerson Street, Seattle, Washington. The property is composed of a warehouse, a smaller office attached to the warehouse, and two smaller buildings. The warehouse—the most prominent feature on the property—has a blue stripe running along each exterior side. Dina Polin is the sole member of Nickerson, and Dina's daughter, LeAnn Polin, manages Nickerson.[1]

Superior sells and consigns preowned cars. Ahmed Elbejou (Bejou) formed the company with one other person in 2014. Near the end of 2018, Superior approached Nickerson about leasing the property. On January 22, 2019, Nickerson and Superior executed a lease agreement. Under the lease, Superior would occupy the property for five years. The lease provided that

---

[1] We refer to the parties by their first names to provide clarity. In addition, because the parties refer to Elbejou as Bejou, we do as well.

Superior's "[a]lterations may be performed only within the [p]remises and only after obtaining [l]andlord's [a]pproval" and that "[t]he placement of any sign or symbol placed in or about the Premises . . . is subject to [l]andlord's [a]pproval." Nickerson could demand removal of a sign that it had not approved and that Superior placed. The lease also required Nickerson to perform a series of tenant improvements before Superior moved into the property.

After executing the lease, the parties continuously accused one another of failing to perform under the lease. In particular, on March 14, 2019, Bejou e-mailed LeAnn and asked for an update regarding the promised improvements. LeAnn provided a list of the completed improvements, but Nickerson had failed to complete some of its requirements under the lease. When Bejou responded that it seemed that Nickerson was behind, LeAnn responded, "My best advice I can give you is to start moving into the building. There is nothing stopping you from this task." She also stressed that Nickerson had "final say on [tenant improvements] and design" and that "[a]ny modifications have to keep in mind future rentability [sic] of the building."

Once Superior moved in, it alleged that there were numerous problems with the building that interfered with Superior's operations. Superior allegedly notified Nickerson, but Nickerson missed several deadlines to make the improvements. Accordingly, Superior issued a notice of default, asking that Nickerson complete the work.

Around the same time, Superior sought Nickerson's approval regarding installation of its business sign on the north side of the warehouse. Superior e-

mailed Nickerson renderings that showed the proposed sign's location and removal of the stripe from the entire north side of the building. Nickerson replied to the e-mail: "Signage is approved. . . . Stripe can be removed where the sign is to be installed." The e-mail also states that "[t]he warehouse portion of the building was not apart [sic] of the agreement for paint." LeAnn later testified that Nickerson approved Superior's removal of the stripe under the sign's placement only. However, a Superior employee removed the blue decorative stripe on the entire side of the building. The employee testified that after they "removed the blue decorative strip on the north side of the building, [they] replaced the screws that came out with screws that were recommended by Tacoma Screw and Stoneway Hardware," thereby filling in the holes from the removed screws.

On September 4, 2019, Nickerson issued a notice of default to Superior and alleged five breaches of the lease. Specifically, at issue on appeal, Nickerson alleged that Superior "performed exterior modifications without prior Landlord approval, including removal of the sheet metal paneling on exterior of building, compromising structural integrity and integrity of building envelope. Holes in the building need to be repaired and siding restored, as approved, in advance, by" Nickerson. In its notice, Nickerson demanded that Superior cure the breaches within 10 days, as required by the lease.

Before trial, Nickerson informed the court that it was "not seeking a damage claim for the structural" issues caused by Superior's default. Rather, Nickerson contended it wanted the "amounts that would be due under the lease as a result of the default." It also asked the court to remedy the material breach

4

by ordering Superior to forfeit the property.

The trial court held a bench trial on February 3 and 4, 2020. In its oral ruling, the court explained: "So all that's alive at this point is a claim that there is removal of the sheet metal paneling, there are holes in the building that need to be repaired, and siding restored, as approved in advance by landlord." To this end, the court concluded that, although there was no evidence regarding how the stripe was put together, "[i]t doesn't matter. What matters is the only permission that was given was to remove the section where the sign was going up. And that's not what happened." The court went on, "Then there was a request to fix the breach," and as of trial, the breach had not been fixed. Regarding materiality, the court concluded, "[O]ne of the clear intentions of the parties in entering this lease was that [Nickerson] got to decide how the building looked from the exterior" and that it "had to approve any changes, and that was important to [it]. It was a material thing, which has been brought up over and over in the trial." And because Superior failed to fix the breach, despite opportunities to do so, the court concluded that Superior materially breached the lease and that Nickerson was entitled to the relief it sought.

The court's order was based on "the undisputed written documents and weighing of the testimony," because "[b]oth sides to this case have significant credibility problems."

On February 20, 2020, Superior moved for reconsideration of the court's oral opinion.[2] It argued that the trial court did and could not rely on any structural

---

[2] Nickerson also moved for reconsideration of findings and judgment,

issues for determining the materiality of the breach and that the removal of the stripe without permission was not material to the lease. The trial court denied Superior's motion.

The same day, the court ordered that Superior restore the premises to Nickerson, that Nickerson was entitled to a writ of restitution, and that Superior pay five months' rent, four months that were past due.

The court entered written findings of fact and conclusions of law. It found, among other findings, that (1) Superior needed prior written approval from Nickerson for all work performed on the property and for any modifications, (2) Nickerson did not approve removal of the entire stripe, (3) the stripe had not been restored, and (4) the removal of the stripe constituted a material breach.

Superior appeals.

ANALYSIS

Standard of Review

"We review a trial court's decision following a bench trial to determine whether challenged findings are supported by substantial evidence in the record and whether the findings support the conclusions of law." Herring v. Pelayo, 198 Wn. App. 828, 832, 397 P.3d 125 (2017). The trial court's unchallenged findings of fact are verities on appeal. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). However, Superior challenges the court's findings of fact 2.16 through 2.21. We review these findings "under a substantial evidence standard, defined as a quantum of evidence sufficient to persuade a rational fair-minded person

requesting that the court correct findings not at issue on appeal.

that the premise is true." Stieneke v. Russi, 145 Wn. App. 544, 566, 190 P.3d 60 (2008). "If the standard is satisfied, we will not substitute our judgment for that of the trial court even though it may have resolved a factual dispute differently." Stieneke, 145 Wn. App. at 566.

### Material Breach

Superior alleges that the trial court erred when it concluded that Superior materially breached the lease and that the findings of fact supporting the court's determination are not supported by substantial evidence. Because the relevant findings are supported by substantial evidence and because Superior breached a material contractual provision, we disagree.

"A material breach is one that 'substantially defeats' a primary function of the agreement." 224 Westlake, LLC v. Engstrom Props., LLC, 169 Wn. App. 700, 724, 281 P.3d 693 (2012) (quoting Park Ave. Condo. Owners Ass'n v. Buchan Devs., LLC, 117 Wn. App. 369, 383, 71 P.3d 692 (2003)). Washington courts have adopted the Restatement (Second) of Contracts'[3] list of five factors to consider "in determining whether a breach is material." Bailie Commc'ns, Ltd. v. Trend Bus. Sys., 53 Wn. App. 77, 83, 765 P.2d 339 (1988). The factors are:

> (1) whether the breach deprives the injured party of a benefit which [they] reasonably expected, (2) whether the injured party can be adequately compensated for the part of that benefit which [they] will be deprived, (3) whether the breaching party will suffer a forfeiture by the injured party's withholding of performance, (4) whether the breaching party is likely to cure [their] breach, and (5) whether the breach comports with good faith and fair dealing.

Bailie Commc'ns, Ltd., 53 Wn. App. at 83. And "[t]he question of materiality

---

[3] RESTATEMENT (SECOND) OF CONTRACTS § 241 (a)-(e) (Am. Law Inst. 1981).

depends on the circumstances of each particular case." DC Farms, LLC v. Conagra Foods Lamb Weston, Inc., 179 Wn. App. 205, 221, 317 P.3d 543 (2014). "The materiality of a breach is a question of fact," and we review it as such, looking for substantial evidence.[4] 224 Westlake, LLC, 169 Wn. App. at 724; Bailie Commc'ns, Ltd., 53 Wn. App. at 82.

We review each of the findings that Superior challenges in order to determine whether the court reasonably found that Superior materially breached the lease. Superior alleges that the following findings of fact are not supported by substantial evidence: (1) that Superior did not have permission to remove the entire stripe, (2) that Superior had not repaired the holes left in the building from the stripe's removal, (3) that the removal of the stripe had the potential to cause water damage, (4) that the parties intended to allow Nickerson to retain exclusive control of the exterior modifications, and (5) that Superior materially breached the agreement when it removed the stripe from the entire north side of the building. We conclude that the findings of fact are supported by substantial evidence, except the findings that Superior had repaired the holes in the building and that the stripe had the potential to cause water damage.

Superior challenges the court's findings that the stripe's removal "was not permitted" and that it had not received Nickerson's approval to remove the stripe. Substantial evidence supports the court's findings that Superior had not received

---

[4] Superior disagrees and asserts that we must review the issue of materiality as a matter of law "where the facts are undisputed or reasonable minds could reach but one conclusion." However, Superior itself challenges numerous findings of fact upon which the trial court relied to conclude that the breach was material. Therefore, Superior's assertion fails.

Nickerson's written approval to remove the stripe. Specifically, although Superior's picture showed the stripe removed from the entire north side, LeAnn's e-mail to Superior clearly stated that the stripe could be removed where Superior intended to install the sign only. Furthermore, her e-mail provided that she was concerned regarding what appeared to be painting of the exterior, which Nickerson had not approved. This evidence is sufficient to find that Superior did not have Nickerson's approval to remove the stripe from the entire north side.

Superior disagrees and asserts that because Superior submitted for Nickerson's approval an image showing the entire stripe removed, the breach was a simple miscommunication. Although we acknowledge the image, the e-mail clearly states that the stripe could only be removed where Superior placed the sign. And "it is well settled that evidence may be substantial even if the record permits other reasonable interpretations." 224 Westlake, LLC, 169 Wn. App. at 725. Therefore, we cannot conclude that the trial court's finding is unsupported by the record.

Next, Superior is correct that substantial evidence does not support the court's finding that Superior had not filled the holes caused by removal of the stripe. No evidence in the record indicates the holes remain unfilled; Nickerson points to none on appeal; and Superior's employee testified that he filled in the holes. Therefore, on remand, we instruct the court to strike the part of the sentence that says the holes remain unfilled.

Similarly, the court must strike the finding that the stripe's removal had the potential to cause water damage. Nickerson struck the issue of structural

9

integrity before trial, and thus, Superior did not have an opportunity to present evidence that the stripe's removal could not cause water damage. Therefore, the trial court erred in making a finding regarding water damage, whether or not the finding was only regarding a *potential* to cause water damage. Like the previous finding, we remand for the trial court to strike this finding from its order.

However, the evidence supports the court's finding that "[o]ne of the clear intentions of the parties in entering into the Lease is that [Nickerson] retained the right to decide how the building looked from the outside," that this "was clearly important to [Nickerson]," and that it was a material issue. Specifically, the unambiguous words of the contract, which provided Nickerson final approval for all exterior modifications, show that the parties plainly intended for Nickerson to retain control of Superior's modifications to the warehouse's exterior. See Colorado Structures, Inc. v. Ins. Co. of the W., 161 Wn.2d 577, 588, 167 P.3d 1125 (2007) (holding that, "[i]f unambiguous, [a contract] should be construed in accordance with the parties' plain intent"). Similarly, LeAnn testified at trial that it was an important part of the agreement. This is supported by the written record and lease provision. Therefore, the trial court did not err when it entered these findings.

Here, given the circumstances in this case and the trial court's remaining findings, substantial evidence supports the court's finding that the breach was material.[5] Specifically, Nickerson reasonably expected—based on the explicit

---

[5] Numerous challenged findings can be viewed as included in the court's finding that the breach was material, e.g., "[p]utting holes in the building, removing screws and removing nonstructural, decorative siding is material"; "[t]he

contractual provision—to retain control over Superior's modifications to the property and, in particular, its modifications to the property's exterior. Similarly, Superior has shown it will not cure its breach until forced to. At the time of trial, five months after receiving notice of the breach, Superior had not yet repaired the north side's siding. This failure on the part of Superior further supports a determination that the breach does not comport with good faith. In addition, Nickerson told Superior on multiple occasions that it needed Nickerson's express approval for any changes, and yet, Superior continuously made changes without approval. The other two Restatement factors do not necessarily lead to a determination that the breach was material. Nonetheless, because of Superior's consistent failure to abide by the explicit provision that Nickerson retain control of the property's exterior and its failure to cure the breach for months after notice, the circumstances support the trial court's finding that the breach was material to the parties' lease. Therefore, the trial court did not err.

Superior also contends that the court applied an incorrect legal standard because it failed to find that the breach "substantially defeated" the purpose of the contract. Superior alleges that the only purpose of the lease was for it to occupy the building and Nickerson to receive rent. However, evidence in the record, including the explicit lease provision, supports the court's determination that the breach substantially impaired a primary function of the lease, i.e., that Nickerson retain the right for approval of Superior's exterior alterations. And this

breach of the Lease for the removal of the metal stripe was material"; and "considering the above factors and a totality of the circumstances, under the facts of this case, the Defendant's breach is significant and material."

is only one of the multiple functions of the contractual relationship here. Thus, although the breach did not defeat Superior's cited purpose, it defeated an intended purpose: that Nickerson retain control over the building's aesthetics. Therefore, we are not persuaded.

## Remedy

Superior asserts that the trial court erred when it granted Nickerson's request for forfeiture of the lease. We disagree and affirm the forfeiture.

"[F]orfeitures are not favored in law." Dill v. Zielke, 26 Wn.2d 246, 252, 173 P.2d 977 (1946). However, because "a trial court has broad discretionary authority to fashion equitable remedies, [we] review[ ] such remedies under the abuse of discretion standard." Emerick v. Cardiac Study Ctr., Inc., P.S., 189 Wn. App. 711, 730, 357 P.3d 696 (2015). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "'A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard.'" In re Marriage of Horner, 151 Wn.2d 884, 894, 93 P.3d 124 (2004) (quoting In re Marriage of Littlefield, 133 Wn.2d at 47). "'[I]t is based on untenable grounds if the factual findings are unsupported by the record[, and] it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.'" Horner, 151 Wn.2d at 894 (quoting In re Marriage of Littlefield, 133 Wn.2d at 47).

Under the circumstances of this case, the trial court did not act manifestly

unreasonable. Superior had months to cure its breach and replace the stripe. Yet, it refused to do so. It further failed to pay rent throughout the entire trial. Superior's ongoing material breach provides an adequate and reasonable basis for the trial court to have concluded that the only adequate remedy was forfeiture. Cf., Deming v. Jones, 173 Wash. 644, 647-48, 24 P.2d 85 (1933) (Where the defendant continuously attempted to cure the alleged breaches, the trial court did not err in denying the plaintiff's request for forfeiture.). Therefore, we affirm.

### Attorney Fees

Each party requests fees on appeal. Because Nickerson prevails on appeal, we award it reasonable fees and costs.

An award of attorney fees must be based in "contract, statute, or recognized ground of equity." Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014). And "[w]hen a contract provides for an attorney fee award in the trial court, the party prevailing before this court may seek reasonable attorney fees incurred on appeal." Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 717-18, 334 P.3d 116 (2014).

Here, the parties agree, as does the court, that the lease provides for the reasonable attorney fees and costs for the prevailing party in any legal dispute to enforce its terms.[6] Because Nickerson prevailed below, we affirm its reasonable fees at the trial court. Because Nickerson prevails on appeal, we award it reasonable fees and costs on appeal, subject to its compliance with RAP 18.1(d).

---

[6] The lease provides that "[i]f either Party employs an attorney to enforce any rights under this [lease], the prevailing Party shall recover all of its costs, including reasonable attorney's fees."

See <u>Viking</u>, 183 Wn. App. at 717-18 ("When a contract provides for an attorney fee award in the trial court, the party prevailing before this court may seek reasonable attorney fees incurred on appeal.").

We affirm the trial court's ruling but remand for the court to strike the two findings not supported by substantial evidence.

_____

WE CONCUR:

Andrus, A.C.J.      Appelwick, J.